1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **MICHAEL SCHULZE,** | ) | **NO. 1:05 - CV- 0180 AWI GSA** |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER GRANTING IN PART AND** |
| **v.** | ) | **DENYING IN PART** |
| | ) | **DEFENDANTS' MOTION FOR** |
| **FEDERAL BUREAU OF** | ) | **SUMMARY JUDGMENT** |
| **INVESTIGATION, DRUG** | ) | |
| **ENFORCEMENT ADMINISTRATION,** | ) | |
| **UNITED STATES MARSHALS** | ) | |
| **SERVICE and DEPARTMENT OF** | ) | Doc. # 54 |
| **JUSTICE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

        This is an action for damages and injunctive relief by plaintiff Michael Schulze

("Plaintiff") against defendants Federal Bureau of Investigation ("FBI"), Drug Enforcement

Administration ("DEA"), United States Marshals Service ("USMS"), and the Department of

Justice ("DOJ") (collectively, "Defendants" or "Defendant agencies").  This action is brought

pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5

U.S.C. § 552a ("PA"), and arises out of the alleged failure of Defendant agencies to timely

provide Plaintiff with information requested under these Acts.  Plaintiff is an inmate of a federal

correctional institution and brings this action *pro se*.  Federal subject matter jurisdiction exists

pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

**JUDICIAL NOTICE**

A federal court may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." U.S. v. Black, 482 F.3d 1035, 1041 (9 Cir. 2007) (internal citation and quotes omitted).  Plaintiff's declaration in opposition to Defendants' motion to dismiss references actions in other courts that relate to Plaintiff and that apparently have a relationship to these proceedings.  The court therefore judicially notices court decisions in the following proceedings: United States v. Schulze, 156 Fed.Appx. 38, 2005 WL 2150267 (9th Cir. 2005); United States v. Schulze, 2007 WL 2156422 (D.Hawai'i 2007); Schulze v. Maglasang, 2010 WL 1539742 (9th Cir. 2010).

**PROCEDURAL HISTORY AND BACKGROUND INFORMATION**

Plaintiff alleges that he became the subject of an FBI investigation into methamphetamine trafficking in Hawaii on or about April 22, 1999.  Plaintiff alleges that during that investigation, FBI procured the cooperation of Steven P. Olaes ("Olaes") and Shane K. Ahlo ("Ahlo") to function as confidential informants and/or witnesses in the investigation and subsequent trial.  Plaintiff alleges FBI investigators improperly recruited and paid Olaes for serving as a confidential informant even though Olaes was serving a term of state-imposed probation at the time and his actions as a confidential informant involved committing illegal acts in violation of the conditions of his probation.  Similarly, Plaintiff alleges that DEA intervened to secure the early release of Ahlo in order to secure his cooperation in the investigation that lead to Plaintiff's arrest.

Plaintiff was convicted on February 13, 2003, on one count of conspiracy to possess and distribute methamphetamine and two counts of distribution of methamphetamine.  Plaintiff was sentenced to a total term of imprisonment of 360 months.  Following his conviction, Plaintiff unsuccessfully challenged the legality and admissibility of a recording of telephone conversations between Plaintiff and Olaes in appeals to the Ninth Circuit and in a motion for new trial before the District Court of Hawaii.  See United States v. Schulze 156 Fed. Appx. 38 at *39 - *40

(finding no reversable error in failure to inform Plaintiff of informant's probation status); United States v. Schulze, 2007 WL 2156422 (recounting Plaintiff's appeals and motion for new trial). Plaintiff also brought an action pursuant to Bivens v. Six Unknown Agents, 403 U.S. 388 (1971), against FBI agent Cindy Maglasang and others alleging the defendants in that case presented false evidence during Plaintiff's forfeiture trial.  The district court's grant of summary judgment in favor of the defendants in that action was affirmed by the Ninth Circuit in Schulze v. Maglasang, 2010 WL 1539742 (9th Cir. 2010).

Commencing in July 2004, Plaintiff began requesting information from Defendant agencies under FOIA.  The information requested falls into the following categories:

- From the FBI: records concerning himself that pertain to the investigation that lead to his arrest and eventual conviction.

- From the FBI: records concerning confidential informants Olaes and Ahlo that pertains to their role in Plaintiff's investigation and eventual conviction.

- From the DEA: records concerning himself that pertain to the investigation that lead to his arrest and eventual conviction.

- From the DEA: records concerning confidential informants Olaes and Ahlo that pertains to their role in Plaintiff's investigation and eventual conviction.

- From the USMS: records involving the location and/or disposition of the items seized following the forfeiture trial and held or disposed of by the USMS.

Plaintiff filed this action on February 9, 2005.  The currently operative First Amended Complaint ("FAC") was filed on August 12, 2005.  The FAC alleges three claims for relief. Plaintiff's first claim for relief alleges violation of the PA as to all Defendants and requests statutory damages from all Defendants in the sum of $950,000.  Plaintiff's second claim for relief is alleged pursuant to FOIA and requests injunctive relief against FBI and DEA for the production of records pertaining to confidential informant Olaes.  Plaintiff's third claim for relief is alleged against DEA and FBI and requests injunctive relief to compel production of records

pertaining to confidential informant Ahlo.

After several extensions of time to file dispositive motions, Defendants filed the instant motion for summary judgment on July 13, 2007.  Doc. # 54.  On August 27, 2007, the court granted Plaintiff's unopposed motion to stay proceedings pending his transfer to another federal correctional facility.  Proceedings were again ordered stayed on March 10, 2008.  The stay was lifted on June 13, 2008, and Plaintiff filed his opposition to Defendants' motion for summary judgment on July 8, 2008.  On August 29, 2008, Defendants filed a document that is captioned "Sur-Reply" but which appears to be their reply brief to Defendant's opposition.   No hearing on Defendants' motion was calendared and the court finds that decision on the pleadings is appropriate.

**PLAINTIFF'S PROPOSED UNDISPUTED MATERIAL FACTS**

Defendants' proposed undisputed material facts comprise some 107 pages, a good deal of which consists of asserted legal bases for the non-disclosure of information.  For purposes of setting out the proposed undisputed material facts, the court will summarize Defendants' allegations with respect to each agency's response to Plaintiff's FOIA request, what documents were produced, if any, and what exemptions were claimed by each defendant agency.

**I.  DEA**

### A.  Plaintiff's Request for Information Regarding Himself

Plaintiff requested by way of a letter dated July 21, 2004, information concerning documents held by DEA pertaining to investigations conducted as to himself in Hawaii, California and Nevada.  DEA informed Plaintiff that his request would not be processed and that DEA would not confirm or deny the existence of any responsive records.  Plaintiff appealed DEA's denial of his FOIA request to the Department of Justice, Office of Information and Privacy ("OIP") on September 22, 2004.  After remand and reconsideration, DEA denied Plaintiff's FOIA request on November 17, 2004, citing FOIA exemptions 5 U.S.C. §§ 552(b)(2), (exemption of materials related solely to internal personnel rules and practices of an agency)

4

(b)(7)(C) (reasonably expected to constitute unwarranted invasion of personal privacy), (b)(7)(F) (reasonably expected to endanger life or physical safety of an individual),  and PA exemption 5 U.S.C. § 552a (j)(2) (general exemption pertaining to law enforcement agencies).  OIP affirmed DEA's denial of Plaintiff's request from DEA for information regarding DEA's investigation of him on January 31, 2005.

Defendants allege DEA conducted a query of the DEA's Narcotics and Dangerous Drugs Information System ("NADDIS"), which indexes information contained in other DEA information systems.  DEA alleges a search of the Investigative Reporting and Filing System ("IFRS") using NADDIS disclosed the existence of a total of 12 pages of documents pertaining to DEA's investigation of Plaintiff.  DEA applied the above-cited exemption to the material contained in the 12 pages.  Although a broader discussion of the application of the exemptions to the material contained in the 12 pages is presented in Defendants' proposed undisputed material facts at B(53) to B(73), the upshot is that, when all exempt material was redacted, no useful information remained.  The information contained on the 12 pages was therefore deemed unsegregable and was therefore withheld in its entirety.

### B.  Plaintiff's Request Regarding Information on Olaes and Ahlo

Plaintiff submitted his FOIA requests for information held by DEA concerning third party witnesses Olaes and Ahlo on September 22, 2004.  DEA informed Plaintiff by a letter dated October 1, 2004, that no search for records concerning either Olaes or Ahlo  could be released unless Plaintiff produce either a notarized Privacy Waiver signed by the third parties or certificates of death.  Plaintiff appealed DEA's decision to OIP on October 11, 2004, and the DEA's denial was affirmed by OIP on December 15, 2004 as to Olaes and on December 27, 2004 as to Ahlo.  OIP informed Plaintiff that records or portions thereof were properly withheld by DEA because the release of those records would constitute an unreasonable invasion of personal privacy within the meaning of FOIA exemption (b)(7)(C).

Plaintiff produced no Privacy Waivers as to either Olaes or Ahlo and consequently DEA

did not search for responsive documents.  The basis of Plaintiff's appeal was his contention that

the weighing of the individuals' privacy interests against the public's interest in DEA's conduct

relating to the use of paid informants.

**II.  FBI**

### A.  Production of Documents Held by FBI Pertaining to Plaintiff

On May 11, 2004, Plaintiff mailed a request to FBI Headquarters ("FBIHQ") for all

records pertaining to himself.  Plaintiff was informed there were no responsive records held by

FBIHQ and, after appeal and affirmation of FBI's response, Plaintiff was informed by letter dated

September 21, 2004, that FBIHQ did not search databases maintained by regional field offices.

Plaintiff was further informed that the Hawaii field offices did maintain records that would be

responsive to Plaintiff's request.  Plaintiff made requests by mail to the Las Vegas and Honolulu

field offices for information concerning himself on October 13, 2004.  On May 20, 2005,

Plaintiff was informed that the Honolulu field office had initially identified and reviewed 230

responsive pages and released 21 responsive pages to Plaintiff.  Plaintiff was informed that the

remaining 209 pages were determined to be exempt from disclosure pursuant to PA exemption

(j)(2) and FOIA exemptions (b)(2), (b)(6), (b)(7)(A), and (b)(7)(C).   Plaintiff filed an

administrative appeal concerning the 209 withheld pages with DOJ/OIP on June 14, 2005.

The Honolulu Field Office ultimately identified two main files that contained documents

responsive to Plaintiff's FOIA request.  File 51-HN-17645 pertains to an FBI jury panel

investigation in the state of Hawaii of persons who were in the pool of potential jurors at

Plaintiff's criminal trial.  File 51-NH-17645 contains a total of 231 pages of documents.  FBI

ultimately determined that all 231 pages would be released to Plaintiff following appropriate

redaction.

File number 245C-HN-16329 pertains to a FBI Narcotics investigation of multiple

subjects, including Plaintiff.  Pursuant to Plaintiff's request for information, supervisory

personnel at the Honolulu field office advised that, even though Plaintiff was investigated,

charged, tried and convicted, the investigation is still underway with respect to other subjects and

other matters remain that are currently under adjudication. Defendants allege:

> The AUSA has advised that there are currently several prosecutions which are being adjudicated in connection with this FBI narcotics investigation and that release of any information from this FBI investigative file to [P]laintiff, other than public source information, could reasonably be expected to interfere with pending criminal law enforcement proceedings in the United States District Courts concerning other subjects of this investigation. A review of all the documents concerning [P]laintiff in Honolulu main file 245C-HN-16329 has not located any documents which contain public source information that could be released to [P]laintiff. Inasmuch as any release of non-public information in this file could reasonably be expected to interfere with these pending criminal law enforcement proceedings in the United States District Courts concerning other subjects of this investigation, all of the documents concerning plaintiff in this Honolulu investigative file are being withheld from disclosure to [P]laintiff pursuant to Privacy Act Exemption (j)(2) and FOIA Exemption (b)(7)(A).

Doc. # 54-1 at 34:14 - 26.

### B. FBI Records Concerning Ahlo and Olaes

On September 22, 2004, Plaintiff sent letters to FBI's Hawaii field office requesting

records pertaining to third parties Ahlo and Olaes. On October 15, 2004, FBI informed Plaintiff

that his request would not be processed as to Ahlo without a notarized Privacy waiver or proof of

death. The same notice was sent to Plaintiff regarding Olaes on October 7, 2004. In both cases,

FBI cited privacy exemptions (b)(6) and/or (b)(7)(C). Plaintiff appealed in both cases, claiming

that Privacy Waivers or proofs of death were not required because public interest in FBI's

practice of using paid informants is sufficient to overcome the privacy interests of the paid

informants. FBI's refusal to process Plaintiff's request in the absence of privacy waivers or

proofs of death was affirmed by DOJ/IOP on March 15, 2005, as to the request for information

on Ahlo and on March 14, 2005, as to the request for information on Olaes.

### III. USMS Records Pertaining to Items Seized from Plaintiff in Forfeiture Proceedings

USMS alleges that the data system used to keep records of items seized as a result to

forfeiture proceedings is the Consolidated Asset Tracking System ("CATS"). The standard

method for retrieving seized or forfeited property information from the CATS database is by the

use of CATS identification numbers which are unique numbers assigned to each item seized or

forfeited.  Inquiries regarding seized items that are not submitted with CATS identification numbers may result in return of incomplete information or no information at all.  Thus all individuals seeking information from the USMS concerning seized or forfeited items are advised to provide specific item identifying information including the CATS identification number.

Plaintiff submitted a request for information on items seized as a result of forfeiture proceedings (the "seized items") by letter to USMS dated September 30, 2004.  USMS alleges the request was submitted without the required certification of personal identity and did not contain sufficient identifying information, including CATS identification numbers to permit a search of the CATS database.  Plaintiff was notified of the requirement for certification of personal identity and for identifying data including CATS numbers by letter dated October 19, 2004.  USMS instructed Plaintiff to submit the required certification and additional identifying information not later than fifteen days from the date of the letter notifying Plaintiff of the deficiencies in his application.  USMS alleges there was no further communication from Plaintiff until the filing of this action.

USMS alleges that Plaintiff's complaint, which was noticed to USMS on October 26, 2005, identified several items of property held by the USMS office in Las Vegas, Nevada.  USMS construed plaintiff's complaint as his FOIA request and, based on the additional information contained in the complaint conducted a search for the property listed in the complaint.  USMS's search of the CATS database returned 994 pages of documents that were determined to be responsive to Plaintiff's request.  USMS provided 100 pages of the 994 pages to Plaintiff without charge after redaction of information pursuant to FOIA exemptions (b)(2) and (b)(7)(C).  Plaintiff was notified that additional pages would be provided at a cost of $0.10 per page.  On June 17, 2006, Plaintiff authorized payment of the copying fees and also requested information from USMS pertaining to surveillance of him by USMS.

Later, on January 19, 2007, USMS amended its response to Plaintiff to indicate that a total of 697 pages were responsive to Plaintiff's request when duplicates were eliminated from

the page count.  Thus, the number of pages remaining after the initial 100 pages were provided was 597.  Of the 597 pages remaining, 73 pages were referred to other components of DOJ as follows: one page originated with Bureau of Prisons, 30 pages originated with FBI, and 42 pages originated with the Executive Office of US Attorneys ("EOUSA").  The January 19, 2007, letter to Plaintiff stated that USMS was prepared to release a total of 521 pages of which 157 pages were ready for release in their entirety and the remainder were available for release with redactions pursuant to FOIA exemptions (b)(2), (b)(5), and (b)(7)(C).  After correcting Plaintiff's mail address, USMS set the 521 pages of documents to Plaintiff plus and additional seven duplicate documents.  Plaintiff was asked to send a copying fee of $52.10.

Based on information returned on Plaintiff's first FOIA request, USMS derived additional information from which they determined that additional information responsive to Plaintiff's request for records pertaining to Plaintiff's criminal (prisoner) files might be located.  The districts of Nevada and Hawaii were advised to conduct searches for information pertaining to Plaintiff's FOIA request that might be found in the Prisoner Population Management/Prisoner Tracking System ("PPM/PTS") and the Warrant Information Network ("WIN").  Ultimately, USMS notified Plaintiff by letter dated June 21, 2007, that an additional 3,001 pages had been located that were responsive to Plaintiff's request.  Of these 3,001 pages, 98 pages originated with other agencies and were referred to those agencies for direct response to Plaintiff.  USMS released the remaining 2, 903 pages to Plaintiff, of which 893 pages were released in their entirety and the remaining 2,010 pages were released with redactions pursuant to FOIA exemptions (b)(2) and (b)(7)(C).

## PLAINTIFF'S PROFFERED DISPUTED MATERIAL FACTS

Plaintiff opposition to Defendants' motion to dismiss is based primarily on Plaintiff's contention that Defendants have misrepresented a number of their proposed undisputed material facts and have omitted other facts that are material to the court's decision.  To some extent, Plaintiff's proposed disputed material facts are intertwined with legal contentions the facts are

alleged to support .  Below, the court summarizes both Plaintiff's alleged disputed material facts and the legal contentions that are linked to those facts.

**I.  Plaintiff's Allegations and Contentions Regarding Information Requested from DEA**

Plaintiff's primary contention in opposition to DEA's motion for summary judgment is that DEA failed to provide documents to substantiate the testimony of DEA agent Sorenson, who testified at Plaintiff's trial that DEA began an investigation of Plaintiff's Activities with the arrest of a person named Donald Grimm on April 22, 1999.  Plaintiff contends that the fact that no records supporting Sorenson's testimony have been produced proves that DEA either conducted an insufficient search of its records or that the records it did produce were improperly withheld. So far as the court can determine from Plaintiff's opposition, Plaintiff's contentions with regard to DEA's refusal to provide records pertaining to either Oales or Ahlo are based on the same arguments made with regard to FBI withholding of the same evidence; that is, that privacy-based exemptions do not apply because the public's concern of DEA and FBI's use of confidential informants outweighs privacy concerns and because Olaes and Ahlo waived privacy rights by testifying at Plaintiff's trial.

**II.  Plaintiff's Proffered Disputed Material Facts and Contentions Regarding Records held by FBI**

With regard to information held by FBI pertaining to himself, Plaintiff alleges that FBI ultimately identified 2,552 pages of documents responsive to his FOIA request in FBI main file 245C-HN-16329 and that all identified pages were withheld pursuant to the above-listed FOIA and PA exemptions.  Plaintiff alleges that, because the statute of limitations on prosecutions under federal law is five years, and because the criminal investigation that produced the bulk of documents requested by Plaintiff was clearly older than the statute of limitations, "it is impossible that there are could be any ongoing investigation involving [Plaintiff] because he was arrested well over [8] years ago."  Doc. # 78 at 7.  Plaintiff notes that Defendants invoked eight separate exemptions in reaching their conclusion that the 2,552 pages of information responsive

to Plaintiffs request should be withheld in their entirety but alleges that Defendants failed to explain how any of the claimed exemptions apply to any particular document or to some portion of the information contained therein.

Plaintiff also alleges FBI's search of its files was incomplete and offers as evidence the fact that other documents provided to Plaintiff have notations in them of other file numbers besides the main filed number 245C-HN-16329. In particular, Plaintiff points to some forms used by FBI for purposes of managing their paid informants that referenced FBI file numbers other than those listed as the files searched by FBI pursuant to Plaintiff's FOIA request.

With regard to information concerning third-party subjects Ahlo and Olaes, Plaintiff alleges such records are not exempt from disclosure because they pertain to matters testified to in court proceedings. Plaintiff also contends that he is entitled to disclosure because Magalsang and Sorenson committed misconduct, apparently by misrepresenting Olaes status as acting under of color of law when he produced recordings of conversations with Plaintiff on August 30, 2001. Plaintiff also contends that, because Ahlo received information from the government with regard to his state sentence, Plaintiff is entitled to disclosure because the public's interest in FBI's supervision of its confidential informants outweighs the rights of the individuals to privacy.

**III. Plaintiff's Proposed Disputed Material Facts and Contentions Regarding DEA Information**

Plaintiff's primary contention with respect to DEA's handling of Plaintiff's FOIA request is that the delay in the production of records of some 26 months caused Plaintiff harm and constitutes violation of the Privacy Act entitling Plaintiff to damages. In addition, Plaintiff alleges DEA has failed to produce all documents pertaining to him. Plaintiff alleges that certain specified items were seized following the forfeiture proceeding and that, for some items known to have been seized, no information has been forthcoming.

**LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to

any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia

Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir.

1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial
> responsibility of informing the district court of the basis for its motion, and
> identifying those portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any," which
> it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary

judgment always has the initial responsibility of informing the court of the basis for its motion,

the nature of the responsibility varies "depending on whether the legal issues are ones on which

the movant or the non-movant would bear the burden of proof at trial."  Cecala v. Newman, 532

F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  A party that does not have the ultimate burden of

persuasion at trial – usually but not always the defendant – "has both the initial burden of

production and the ultimate burden of persuasion on the motion for summary judgment."  Nissan

Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "In

order to carry its burden of production, the moving party must either produce evidence negating

an essential element of the nonmoving party's claim or defense or show that the nonmoving party

does not have enough evidence of an essential element to carry its ultimate burden of persuasion

at trial."  Id.

　　　If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities

Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280

(9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing

party may not rely upon the mere allegations or denials of its pleadings, but is required to tender

evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

support of its contention that the dispute exists.  Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>First Nat'l Bank</u>, 391 U.S. at 289; <u>Strong v. France</u>, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Anderson</u>, 477 U.S. 248-49; <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>First Nat'l Bank</u>, 391 U.S. at 290; <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); <u>International Union of Bricklayers v. Martin Jaska, Inc.</u>, 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); <u>Poller</u>, 368 U.S. at 468; <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(per curiam); <u>Abramson v. University of Hawaii</u>, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d

898, 902 (9th Cir. 1987).

**DISCUSSION**

**I. The Court's Understanding of Plaintiff's Claims**

As Defendants correctly note, Plaintiff's FAC alleges one claim under the Privacy Act, presumably against all Defendants, based on the Defendant agencies' alleged failure to produce records pertaining to Ahlo and Olaes, failure to adequately search records, failure to disclose information regarding Plaintiff that was identified as responsive to his request, and delay in producing responsive records.  Plaintiff's second and third claims for relief are alleged pursuant to FOIA and are presumably alleged against FBI and DEA for failure to conduct any search of records responsive to Plaintiff's FOIA request for information pertaining to Olaes and Ahlo and the refusal of FBI and DEA to confirm or deny the existence of such records.

As will be discussed below, the Privacy Act and FOIA are separate enactments with separate policy purposes and the former is not, as Plaintiff appears to contend, a means of vindicating rights secured by the latter.  Somewhat unfortunately, Defendants have structured their motion for summary judgment as though Plaintiff had asserted claims under FOIA for the withholding of information concerning himself; a claim that the court has determined Plaintiff has not made.  As a consequence, a great deal of both proffered undisputed material fact and legal argument is targeted toward the proposition that the Defendant agencies correctly withheld information concerning Plaintiff under FOIA from Plaintiff; a proposition that is irrelevant to Plaintiff's claims.  Most of the material submitted by Defendants is therefore irrelevant to the issues raised by their motion for summary judgment.  The court raises this point to inform Defendants that the court has searched diligently for information pertinent to the issues it addresses.  To the extent the court may have missed relevant information in the large body of otherwise irrelevant information, the court apologizes.  However, the court requests that proffered undisputed material facts and legal arguments in any future dispositive motions be more carefully restricted to include only what is relevant.

14

**II. Privacy Act Claims**

Although Plaintiff's first claim for relief is somewhat vaguely worded, it appears Plaintiff's first claim under the Privacy Act, 5 U.S.C. § 552a(g), is alleged against all Defendants although the basis for the individual claims appears to vary between the defendants. With regard to DEA and FBI it appears clear, between Plaintiff's FAC and his opposition to Defendants' motion for summary judgment, that Plaintiff's first claim for relief is based on the allegation DEA and FBI improperly withheld documents responsive to his requests in violation of § 552a(d)(1). With regard to USMS, the basis of Plaintiff's Privacy Act claim is less clear. So far as the court can discern, Plaintiff's claim against USMS appears to be based on Plaintiff's allegations that the USMS's delays in producing all the pages of information that were ultimately produced is somehow actionable under the Privacy Act. In addition, Plaintiff alleges that USMS's search for responsive documents was/is incomplete and therefore actionable because certain documents Plaintiff expected to be provided were not provided. The court will first discuss the general legal framework of agency liability under the Privacy Act and then will discuss how that framework is applied as to each Defendant Agency.

*A. General Framework for Privacy Act Claims*

The Privacy Act serves two principal purposes. First, the Act "restrict[s] the information about individuals' First Amendment activities that the government may collect and maintain at all, MacPherson v. I.R.S., 803 F.2d 479, 482 (9th Cir. 1986), and second, it mandates standards of accuracy, relevancy, timeliness and completeness as to information that may be collected and maintained. Doe v. Federal Bureau of Investigation, 936 F.2d 1346, 1350 (D.C.Cir. 1991). "In furtherance of th[ese] goal[s], the Act grants individuals the right to obtain access to agency records pertaining to them, and to request amendment of any records they believe to be inaccurate, irrelevant, untimely, or incomplete." Id.

The Privacy Act provides remedies that vary depending on the right infringed under the Act. Pursuant to 5 U.S.C. § 552a(g)(1), an individual may maintain an action against an agency

if:

>(1) the agency fails to make amendments or corrections to records that are required by statute, §(g)(1)(A);
>(2) the agency fails to provide records pertaining to the individual for inspection, §(g)(1)(B);
>(3) the agency "fails to maintain any record concerning any individual with such accuracy, relevance, timeliness and completeness as is necessary to assure fairness in any determination relating to the qualifications , character, rights or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual," §(g)(1)(C); and
>(4) the agency "fails to comply with *other* provisions of *this* section [. . .] in such a way as to have an adverse effect on an individual." (g)(1)(D).

Id. (italics added).

Where an agency fails to *amend* a record as required by subsection (g)(1)(A), "the court may order the agency to amend the individual's record in accordance with his request," and may award attorney's fees to the individual.  5 U.S.C. §§ 552a(g)(2)(A) and (B).  Where an agency fails to *produce* records for the individual's inspection in violation of subsection §(g)(1)(B), the court may enjoin the agency to produce the records and provide them to the individual subject to the court's in camera review of such records to determine if they are exempt from disclosure and award attorney's fees.  5 U.S.C. §§ 552a(g)(3)(A) and (B). Where an agency is found by the court to have caused detriment to an individual through failure to adequately *maintain* any record pursuant to subsection (g)(1)(C), or to have produced detriment to the individual by failing to comply with *other* requirements of the Privacy Act under subsection (g)(1)(D), monetary damages and attorney's fees are available provided the court determines that agency action or inaction causing the harm was wilful or intentional.  5 U.S.C. §§ 552a(g)(4)(A) and (B).

Thus, before there is any consideration of exemptions, the court notes that the remedies available to Plaintiff under the Privacy Act are dependent on the harms alleged.  The claims alleged in Plaintiff's complaint center around the alleged failure of the Defendant Agencies to provide records pertaining to him.  The court notes at the outset that Plaintiff has not made any allegations that records received somehow deficient as to their content, nor is there any indication that Plaintiff applied to any agency to correct the content of any records.  To the extent that

Plaintiff's claims under the privacy act involve claims of non-disclosure and to the extent the court can discern no cognizable claim of harm based on the content of the records, the court finds Plaintiff is not entitled to monetary damages for the harms alleged.

Beyond the statutory limitations on the types of remedy available based on the harms alleged, the Privacy Act provides for the exemption of certain systems of records from specified requirements or provisions of the Act including *inter alia*, the requirement of provision of records under subsection (d)(1) and the availability of civil remedies under subsection (g).  See 5 U.S.C. § 552a(j); Doe, 936 F.2d at 1351 (obligations of the Act not absolute in that agencies may exempt certain systems of records from some Act requirements).  The exemptions created pursuant to section 552a(j) do not necessarily define the availability of records under FOIA.  See Greentree v. U.S. Customs Serv., 674 F.2d 74, 89 (D.C. Cir. 1982) ("section (j)(2) of the Privacy Act is not a FOIA exemption 3 statute).  Conversely, it is obvious from the text of the Privacy Act that the remedies provided by the Act are solely based on violations of rights due under the Privacy Act.  There is no textual basis for the use of the Privacy Act to provide remedy for the infringement of rights under any other act, including FOIA.

Pertinent to this action, the Privacy Act permits the head of a law enforcement agency to exempt any system of records from any part of the Act (except for specific subsections that are not at issue here), where the records consist of information compiled for the purpose of criminal identification or investigation.  5 U.S.C. § 552a(j)(2); Doe, 936 F.2d at 1351.  "To exempt a system of records from access under the Privacy Act, an agency must, first, promulgate rules, pursuant to the rulemaking requirements of 5 U.S.C. §§ 553(b)(1), (2), and (3), (c), and (e), and, second, state the reasons in the rule itself why the system of records is to be exempt from a provision of the act."  Exner v. F.B.I., 612 F.2d 1202, 1204 (9th Cir. 1980).  The record system for which an agency is claiming a law enforcement exemption "must be 'maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws' and must consist of 'information compiled for the purpose of a

criminal investigation.' [Citation.]" <u>Aquino v. Stone</u>, 957 F.2d 139, 141 - 142 (4th Cir 1992) (citing 5 U.S.C. § 552a(j)(2)).

The Privacy Act contains no parallel to FOIA's requirement that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this section." 5 U.S.C. § 552(b).  Thus, the Privacy Act treats exempt materials in a fundamentally different way than FOIA.  With regard to the Privacy Act, exemption is determined at the level of the record, not the individual data entries in a record.  Subject to specific requirements promulgated by an agency pursuant to the Privacy Act, an agency may exempt records systems subject only to the requirement that the "information [is] compiled for the purpose of a criminal investigation" pursuant to subsection (j)(2), or subject to such other limitations as the agency may impose. *Compare*, 28 C.F.R. § 16.98(c) (placing no additional PA exemption requirements on DEA's Investigative Reporting and Filing System), *with* 28 C.F.R. § 16.96(a) (requiring that exemption of records under the PA from FBI's Central Records System also be subject to exemption requirements under PA requirements 5 U.S.C. §§ 552a(j) and (k)). However, once a record or system of records is determined to be lawfully exempt, the Privacy Act will not support a claim that alleges that segregable information contained in some portion of an exempt record or system of record was withheld.

In addition, "[u]nder the Privacy Act, an individual may gain access to nonexempt records only if they concern him or her." <u>Exner</u>, 612 F.2d at 1207 (Pregerson, J., concurring); <u>see also</u> <u>Greentree</u>, 674 F.2d at 89 (Privacy Act makes government records available to "first persons"). Thus, to the extent Plaintiff's complaint may purport to assert claims under the Privacy Act against any Defendant Agency for withholding records pertaining to third persons Ahlo or Olaes, such claims cannot be maintained.

### B. Privacy Act Claim Against DEA

In their proffered undisputed material facts, Defendants allege, and Plaintiff does not dispute, that the information requested by Plaintiff is likely contained in the DEA Investigative

Reporting and Filing System (information gathered during the course of a criminal investigation); the DEA Planning and Inspection Division Records (conduct of DEA employees during an investigation); and DEA Operations Files (information concerning confidential informants). Defendants allege DEA promulgated rules pursuant to 5 U.S.C. § 552a(j)(2) to exempt these systems of records from the requirements for, *inter alia,* disclosure under subsection (d) and civil remedies under subsection (g).  Defendants point to 28 C.F.R. § 16.98 for the rules promulgated by DEA.

The court has examined the provisions of 28 C.F.R. § 16.98 and finds that DEA has promulgated rules to exempt the information systems likely to contain information responsive to Plaintiff's requests for information from requirements for discovery and from provisions for civil remedy.  At subdivision 28 C.F.R. § 16.98(c), DEA exempted the three records systems listed above from the provisions of Privacy Act subsections (c)(3) and (4); (d)(1), (2), (3), and (4) (disclosure provisions), and, *inter alia*, (g) (civil remedies).  See 28 C.F.R. § 16.98(c) and subsections (c)(3), (4), and (5).  The court notes that the exemption of DEA records provided by 28 C.F.R. § 16(c) does not require that the material being exempted also be exempt under any other provision.  The court finds that DEA's reasons for the exemptions of these records systems from the requirements of disclosure and civil remedy are extensively and adequately set forth at 28 C.F.R. §§ 16.98(h)(3) - (h)(9).  In finding that DEA's exemption of the aforementioned records systems from the requirements of disclosure and civil remedy meet statutory requirements and are therefore valid, the court notes that Plaintiff has made no argument that any Defendant Agency's exemption of its records systems from the requirements of the Privacy Act are flawed or ineffective.

Because DEA has exempted from disclosure under the Privacy Act records located in system of records that would likely contain information responsive to Plaintiff's requests for DEA records concerning himself, and because the court finds that DEA's exemption was promulgated in accordance with the requirements of 5 U.S.C. § 552a(j)(2), the court concludes that Plaintiff

cannot maintain his claim for relief against DEA for failure to disclose information that was likely contained in those records.  In addition, to the extent Plaintiff's complaint can be interpreted as alleging claims against DEA under the Privacy Act for failure to release information pertaining to either Olaes or Ahlo, the court concludes such claims are not supported by the Privacy Act.

### C.  Privacy Act Claim Against FBI

The main record system pertaining to criminal investigative information maintained by the FBI is the Central Records System ("CRS").  In addition, FBI maintains a separate system of records known as the Electronic Surveillance Indices ("ELSUR"), a system of records that is distinct from the CRS system.  In their proffered undisputed material facts, Defendants allege that the records that would be responsive to Plaintiff's FOIA request would be contained in either the CRS or ELSUR.  Plaintiff does not oppose or dispute these undisputed facts.

Unlike the systems of records exempted from the PA by the DEA, the system of records held by FBI in their CRS is subject to the general law enforcement exemption of subsection (j) and the specific exemptions of subsection (k) *except* that "[w]here compliance [with the Privacy Act] would not appear to interfere with or adversely affect the overall law enforcement process, the applicable exemption may be waived by the FBI."  28 C.F.R. § 16.96(a)(1).  Courts have interpreted FBI's exemption of records under the Privacy Act to mean that the exemption does not extend to all records contained in the CRS but only to those records that FBI can show "constitute law enforcement records within the meaning of the statute."  Doe, 936 F.2d at 1353.  The burden is on FBI to show that the exemptions apply.  Id.

In Doe, the D.C. Circuit borrowed the test used for law enforcement exemption under FOIA from their decision in Pratt v. Webster, 673 F.2d 408 (D.C. Cir. 1982) to apply to the law enforcement exemption in the Privacy Act.  Doe, 936 F.2d at 1353.  Pursuant to Pratt, the agency seeking exemption must show first that "'the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security.' [Citation.]" Doe, 936 F.2d at 1353 (quoting Pratt 673 F.2d at 420).  Second,

20

"'the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least "a colorable claim" of its rationality.' [Citation.]." Doe, 936 F.2d at 1353 (quoting Pratt 673 F.2d at 421).

In its proffered undisputed material facts, FBI alleges that, of the two files found in the CRS that contain records responsive to Plaintiff's FOIA requests, one file (51-HN-17645) contained information from a jury panel investigation that was largely released to Plaintiff as a result of this litigation. The other file (245C-HN-16329) consists of three sub-files each having to do with investigation of multiple subjects, including Plaintiff. Defendants allege Plaintiff is one of a number of subjects subject to investigation for suspected involvement in criminal narcotics trafficking activity and that each of the sub-files containing records responsive to Plaintiff's request for information is directly related to that investigation. FBI has jurisdiction over the enforcement of laws related to manufacture and distribution of narcotics pursuant to 21 U.S.C. § 801 et seq. Although the contents of the records are discussed more thoroughly with respect to exemptions under FOIA, the court is satisfied that the records withheld by FBI on the ground of law enforcement exemption bear a clear and incontrovertible nexus to FBI's law enforcement duties in the area of enforcement of narcotics trafficking laws.

Where, as here, an agency "meets both prongs of the Pratt test, the burden shifts to the plaintiff to produce evidence that the asserted law enforcement rational for an investigation was in fact pretextual." Doe, 936 F.2d at 1354. Plaintiff does not dispute that the FBI records responsive to Plaintiff's FOIA request were not records not related to law enforcement investigative activities of the FBI. Rather, Plaintiff's main contention is that his investigation cannot be ongoing since the statute of limitations is passed on any narcotics violations occurring at that time. The underlying premise in Plaintiff's argument is that systems of records that are exempt pursuant to the Privacy Act become un-exempt when an investigation is completed. Plaintiff does not submit, and the court can find absolutely no authority to support Plaintiff's argument. To the extent the court can find authority that at least tangentially addresses the issue of whether the lack of current

law enforcement utility renders a previously exempt record somehow non-exempt, such authority tends to indicate that exemption under the Privacy Act is an enduring feature of the record or record system.  In <u>Doe</u>, for example, the D.C. Circuit held that FBI was not liable under the Privacy Act when they failed to correct or expunge inaccurate records collected more than ten years before the plaintiff's request and even though the conviction that was related to the records had been set aside and ordered expunged.  <u>See Doe</u>, 936 F.2d at 1351 (agreeing with FBI's argument that exemption under 5 U.S.C. § 552a(j)(2) "relieves the agency of any obligation to update and correct records in its [exempt] investigative files. . .").

Further, the D.C. Circuit's decision in <u>Doe</u> was significantly limited by the Ninth Circuit in the aforementioned case of <u>Aquino v. Stone</u>.  In <u>Aquino</u>, the Ninth Circuit differentiated the holding in <u>Doe</u> by noting that the decision in <u>Doe</u> was aimed at the critical question of "'whether the FBI's investigatory information on [the plaintiff] lost its exempt status when it was subsequently used, in altered form, for a non-law enforcement purpose.'" <u>Aquino</u>, 957 F.2d at 142 (quoting <u>Doe</u>, 936 F.2d at 1356).  In <u>Aquino</u>, a case factually much closer to the situation in this case, the Ninth Circuit opined that the Privacy Act was not "intended to provide an amendatory procedure for records about investigations into violations of the criminal laws."  <u>Aquino</u>, 957 F.2d at 142.  The <u>Aquino</u> court held:

> [The plaintiff's] principal complaint centers on his contention that the investigation itself was improperly motivated and that information reported was in some respects false, but he does not controvert the authenticity of the records or the fact that a criminal investigation was conducted.  In these circumstances, we cannot conclude that a statute aimed at protecting the privacy or records can be made the vehicle to challenge whether an underlying criminal investigation was properly motivated.  It is sufficient for the Privacy Act exemption that the records are authentic and were generated by the [law enforcement agency's] investigation into a possible violation of the criminal law based on information sufficient to support at least "a colorable claim" that the subject committed the violation.

<u>Id.</u> at 142 - 143 (quoting <u>Pratt</u>, 673 F.2d at 421).

Based on <u>Aquino</u>, <u>Doe</u>, and related authority, the court concludes that systems of records that are properly exempted pursuant to 5 U.S.C. § 552a(j)(2) are exempted from the requirements of disclosure and civil remedy and that such exemption is both categorical and enduring.  That is,

records or systems of records that are properly exempted are exempt as to all information contained in the records without any obligation on the part of the agency to segregate information within records that might otherwise not be exempt.  In addition the records or systems of records that are properly determined to be exempt under the Privacy Act remain exempt despite the passage of relevant statutes of limitations or the termination of particular investigations.  Because the court has concluded that FBI's designation of the information contained in records in the CRS and ELSUR systems of records to be exempt was proper, Plaintiff may not assert claims under the Privacy Act for failure to disclose those records or any information contained therein.

### D. Incomplete Search Claims Under the Privacy Act

FOIA contains "due diligence" provisions that require that an agency to maintain records in forms and formats that can be recovered and reproduced by electronic means and requires that agencies conduct electronic searches in a way that is likely to return records responsive to the request.  See 5 U.S.C. §§ 552(a)(3)(C) and (D).  There are no parallel requirements within the Privacy Act.  Case authority for the proposition that the Privacy Act provides an avenue for recovery of civil damages for failure to adequately search for records appears sparse.  In Chambers v. Dept. of the Interior, 568 F.3d 998 (D.C. Cir. 2009), the D.C. Circuit, without examination of the issue, applied the standard established for adequacy of search for records under FOIA to similar claims under the Privacy Act.  See id. at 1003 ("whether under the Privacy Act or FOIA – ' "[a]t the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched"'").  While the court is of the opinion that there exists some doubt that Congress intended that the Privacy Act provide civil remedies for an agency's failure to adequately search its files, the court finds the results of this action do not turn on the issue.  The court, in the interests of giving fullest consideration to Plaintiff's claims, will follow Chambers and apply FOIA standards to Plaintiff's failure to search claims to the

extent those claims are asserted under the Privacy Act.

"In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. Dept. of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). "The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*. [. . . .] In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed nonconclusory affidavits submitted in good faith." Steinberg v. U.S. Department of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (italics in original); see also, Perry v. Block, 684, F.2d 121, 128 (D.C. Cir. 1982) (agency need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist).

So far as the court can determine, the basis of Plaintiff's claim for failure to search with regard to FBI is that in the discovery process, Plaintiff became aware of file numbers of documents held by FBI that were not produced.  In particular, Plaintiff points to Exhibits "D" and "F" submitted in conjunction with his opposition to Defendants' motion to dismiss.  Exhibits "D" and "F" are copies of completed "Cooperative Witness Unlawful Activity Authorizations" that were presumably generated in conjunction with FBI's management of either or both Olaes and Ahlo as informant/witnesses.  The forms list a "Case ID Number" of 270F-HN-17119 and Substantive Case and Universal File Numbers 245E-HN-16711-S4 and 281C-HN-16329-S1, respectively.  Plaintiff also references other file numbers which, presumably, were mentioned or referenced in discovery materials that became available to Plaintiff.

The court has reviewed the affidavits submitted by FBI and is satisfied that FBI identified the records systems likely to contain records responsive to Plaintiff's request and conducted searches of those systems using variant spellings of Plaintiff's name and all reasonable other identifiers.  In short, the court finds that FBI carried its burden to show it conducted a search reasonably likely to discover all documents responsive to Plaintiff's request.  At this point it

becomes Plaintiff's burden to show that there remains a material issue of fact as to whether a reasonable search was conducted.  What Plaintiff offers to satisfy that burden, at least with respect to FBI, is a short list of file numbers gleaned from discovery materials.  The presumption implicit in Plaintiff's reliance on these file numbers is that the files represented by those numbers pertain to him and that they are within the scope of his requests.  The court cannot assume either supposition is true.

By inspection, Plaintiffs exhibits "D" and "F," the documents themselves appear to pertain more to the management of FBI's informant/witness than to any investigation of Plaintiff.  As such, it is reasonable to assume that the file numbers referenced generally contain information related to either or both Olaes and Ahlo.  As previously discussed, the Defendant agencies have no legal duty under the Privacy Act to search their records systems for information pertaining to persons other than Plaintiff.  Thus, if the file numbers in question pertain primarily to either Olaes or Ahlo, FBI or any other Defendant agency has no obligation to search for records responsive to those names or to provide them to Plaintiff.

### E.  Privacy Act Claims Against USMS

Plaintiff's alleges claims under the Privacy Act against USMS on two grounds.  First, Plaintiff alleges that USMS delayed release of information responsive to his FOIA requests for a total of 26 months, that the reasons given for the delay by USMS were pretextual, and that the delays in release of the information caused Plaintiff harm.  Second, Plaintiff alleges that USMS failed to adequately search for records responsive to his request as evinced by the absence of records or documents that pertain to certain items of property that were seized by USMS and presumably subsequently disposed of.

### 1.  Delayed Disclosure

Plaintiff alleges, and USMS does not appear to deny that the bulk of information released to Plaintiff in response to his FOIA requests for information was released after Plaintiff brought this action.  Nor is there any dispute that the release of the bulk of the information requested by

Plaintiff occurred 26 months afer the requests.  What Plaintiff fails to demonstrate is that the 26-month period that Plaintiff characterizes as delay is somehow actionable under the Privacy Act. While FOIA contains rather detailed time frames for agency response to requests for information and contains specific provisions that relieve agencies from specified time limits under certain circumstances, see 5 U.S.C. § 552(a)(6)(A) (setting 20-day time limits for initial determination and appeals of adverse determinations), the Privacy Act contains no similar time-limit provisions. While, as previously discussed, there is some authority for the proposition that courts may import some standards for adequacy of agency search efforts under the Privacy Act from FOIA, the court can find no case that makes a delay in the provision of information actionable under the Privacy Act.

Even if the time limit provisions contained in FOIA did apply to the provision of information under the Privacy Act, those provisions would not afford Plaintiff a basis for the relief he seeks.  Under FOIA, where an agency fails to provide requested records within the time frame specified and were no exemption from the time limit applies, the plaintiff is deemed to have exhausted administrative remedies such that the plaintiff my proceed to take action in district court 5 U.S.C. § 552(a)(6)(C)(i).  There is no statutory or case basis the court can find for the proposition that an agency's delay in response beyond a particular time frame, in and of itself, can be the basis for separate relief in a district court under either FOIA or the Privacy Act.  Similarly, to the extent Plaintiff's complaint purports to assert a claim against any agency based on the contention that Plaintiff was required to institute this action in order to receive the information provided, the court finds there is no basis for such claim.

### 2.  Claim Against USMS for Failure to Conduct Adequate Search

Plaintiff clarifies in his opposition to Defendants' motion for summary judgment, that the complaint alleges a claim under the Privacy Act against USMS that alleges USMS failed to conduct a reasonable search for records pertaining to the disposition of certain items seized from Plaintiff in seizure proceedings subsequent to Plaintiff's conviction.  Specifically, Plaintiff

complains that he has received no records reflecting the state or disposition of Plaintiff's

"Geronimo Way property and his 2000 Bobcat front end loader, and contends that the failure of

USMS to produce such records is evidence of failure to conduct an adequate search.

Plaintiff does not dispute that the CATS record system is used by USMS to contain records

pertaining to seized or forfeited property.  Plaintiff also does not dispute that USMS requested

additional identifying information in order to process Plaintiff's request, including CATS

identification numbers of the property items.  As the court understands Plaintiff's argument, the

fact that USMS ultimately produced information responsive to his request after the instant action

was filed and without Plaintiff supplying CATS identification numbers proves that USMS was less

than honest when it claimed that a proper search of the CATS records system requires that CATS

identification numbers be provided in order for the agency to conduct searches of the CATS

system.

As discussed above, to carry its burden for purposes of summary judgment, an agency must

show that it made "a good faith effort to conduct a search for the requested records, using methods

which can be reasonably expected to produce the information requested."  Oglesby, 920 F.2d at 68.

In this regard it is important to keep separate Plaintiff's claim for delay of production of records – a

claim that is lacking in any statutory or case-based basis – from the claim of incomplete search.

Here, Plaintiff's averments concerning USMS's lack of veracity as to the reasons for the delay or

as to the information it need to locate responsive records are irrelevant.   What is relevant is that

ultimately USMS produced what Plaintiff admits to be about 3,000 pages of records responsive to

Plaintiff's request using identifying information then available.  That USMS used identifying

information other than CATS identification numbers and was able to compile records responsive to

the majority of Plaintiff's specific information requests evinces a good-faith effort to retrieve

information responsive to Plaintiff's request from the record system likely to contain the

information requested.  Plaintiff is entitled to nothing more.

The fact that "as yet uncovered documents may exist does not undermine the finding that

the agency conducted a reasonable search." Steinberg v. Dept. of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994). The court finds that USMS has carried its burden with regard to Plaintiff's claim under the Privacy Act. Essentially, the only relevant fact Plaintiff can offer is the fact of agency non-production of documents pertaining to two items of property where the identifying numbers that would have produced the best search results was lacking. Plaintiff has failed to show that a material issue of fact remains as to any element of his claim against USMS under the Privacy Act.

### F. Plaintiff's Privacy Act Claims Against DOJ

As clarified in his opposition to Defendants' motion for summary judgment, Plaintiff's claim against DOJ under the Privacy Act is based on DOJ's alleged failure to reverse agency decisions concerning records and information not provided and, in general, DOJ's alleged failure to force agency compliance with the terms of the Privacy Act. Essentially, Plaintiff's Privacy Act claims against DOJ are derivative of his Privacy Acts against the other Defendant Agencies. Without making any determination concerning the immunity of DOJ from such claims, the court notes that the court has determined that none of Plaintiff's claims under the Privacy Act against any of the other Defendant Agencies are viable. It follows that since Plaintiff has failed to demonstrate any issue of material fact with respect to any Defendant Agency with respect to Plaintiff's Privacy Act claims, there exist no viable claims against DOJ.

Summary Judgment will be ordered as to each of Plaintiff's claims under the Privacy Act against each Defendant.

## III. Claims Under FOIA

Plaintiff's second claim for relief alleges that unspecified Defendant Agencies failed to produce requested records pertaining to Olaes in violation of FOIA. Plaintiff's third claim for relief, which is mislabeled as the second claim, makes the same allegation against the same Defendants with respect to information requested on Ahlo. It is the court's understanding, based on a careful reading of the complaint, that Plaintiff makes no claims under FOIA regarding information pertaining to himself that was or was or was not released by the Defendant Agencies.

It also is the court's understanding that Plaintiff's claims are alleged only against those agencies from whom Plaintiff requested information on either Ahlo or Olaes; that is, against FBI and DEA.

Both DEA and FBI responded to Plaintiff's requests for records pertaining to Olaes and Ahlo by neither confirming or denying the existence of such records.  Both DEA and FBI informed Plaintiff that no search of agency records would be performed in the absence of a properly executed waiver of privacy or proof of death of the individual about whom the request was made. DEA's and FBI's response reflects a doctrine that originated in <u>Phillippi v. CIA</u>, 546 F.2d 1009 (9th Cir. 2009).  The doctrine, called the *Glomar* doctrine, allows an agency to refuse to disclose whether the requested records do or do not exist where such disclosure is statutorily exempt under FOIA.  <u>Wilner v. Nat'l Security Agency</u>, 592 F.3d 60, 67 (D.C. Cir. 2009).  "To properly employ the *Glomar* response to a FOIA request, an agency must 'tether' its refusal to respond, [. . .],to one of the nine FOIA exemptions – in other words, 'a government agency may . . . refuse to confirm or deny the existence of certain records . . . if the FOIA exemption would itself preclude the *acknowledgment* of such documents.' [Citation.]" <u>Id.</u> at 68 (citing <u>Minier v. CIA</u>, 88 F.3d 796, 800 (9th Cir. 1996)) (italics in original).

DEA contends that it appropriately employed the *Glomar* response with respect to Plaintiff's FOIA requests regarding records pertaining to Olaes and Ahlo "pursuant to FOIA exemptions (b)(6), (b)(7)(C) and (b)(7)(F) and/or to the extent that the information would disclose the identity of and or information provided by a confidential source, FOIA exemption (b)(7)(D)." Defendants' Undisputed Material Fact B(33).  FBI similarly contends it properly employed the *Glomar* response with respect to Plaintiff's FOIA requests regarding records pertaining to Olaes and Ahlo pursuant to FOIA exemptions (b)(6) and (b)(7)(C).  Although FBI does not appear to invoke FOIA exemptions (b)(7)(F) or (b)(7)(D), the court presumes that those exemptions would apply equally to FBI as to DEA to the extent they apply at all.

The procedural structure of FOIA, which places an emphasis on disclosure and the burden of proof of exemption on the party with the information is intended to address the:

> lack of knowledge by the party seeking disclosure [which] seriously distorts the traditional adversary nature of our legal system's form of dispute resolution. Ordinarily the facts relevant to a dispute are more or less equally available to adverse parties. In a case arising under the FOIA, this is not true, as we have noted, and hence the typical process of dispute resolution is impossible.

Vaughn v. Rosen, 484 F.2d 820, 824 - 825 (D.C. Cir. 1973). In Vaughn, the court addressed this imbalance by requiring that the agency produce an index of records for which exemption was claimed and that the agency produce for each withheld item of information a description of the information being withheld and the specific exemption being claimed. Id. at 827. The purpose of this so-called *Vaughn* index is both to enable meaningful challenge to an agency's refusal to produce requested information and to enable district and appellate courts to adequately adjudicate the dispute. Id; King v. Dep't of Justice, 830 F.2d 210, 218 - 219 (D.C. Cir. 1987). In Fiduccia v. U.S. Dep't of Justice, 185 F.3d 1035 (9th Cir. 1999), the Ninth Circuit acknowledged the utility of a *Vaughn* index in some circumstances, but held that an agency was not obliged to produce such an index where the circumstances are such that sufficient information about the withheld records exists to allow the requesting party "a meaningful opportunity to contest, and the district court an adequate opportunity to review, the soundness of the withholding." Id. at 1042.

When an agency invokes the *Glomar* response it withholds essentially all information from the requesting party including information as to whether the requested records exist. The response is therefore the functional equivalent of a non-response and represents the most extreme departure from the policy purpose of the FOIA to inform and promote transparency in governmental affairs. See Lame v. U.S. Dep't of Justice, 654 F.2d 917, 921 (3rd Cir. 1981) (*Glomar* response is a significant departure from the usual duty of agency to at least produce index of withheld records and reasons each element of record qualifies for exemption pursuant to Vaughn). While the *Glomar* response may have the practical effect of relieving an agency from its duty under FOIA to examine each element of withheld records to determine whether the information contained therein is segregable from the body of withheld information, it is evident from the discussion in Lame and Wilner that the *Glomar* response is not intended to be a response of convenience.

1    It is not disputed that both FBI and DEA informed Plaintiff that neither agency would

2    search their record systems for records pertaining to Olaes or Ahlo without properly executed

3    waivers of privacy or proofs of death of the subjects.  It is also apparent to the court, based on its

4    review of Defendant's proffer of undisputed material facts that no search of FBI or DEA

5    information systems was ever conducted and consequently there is no information before the court

6    as to what, if any, records either agency may possess regarding the third parties.  The undisputed

7    material facts proffered by Defendants therefore raise two issues with regard to DEA's and FBI's

8    response to Plaintiff's FOIA request for information pertaining to Olaes and Ahlo.  First, are the

9    agencies authorized under FOIA to neither confirm or deny the existence of records pertaining to

10   third parties where the requesting party fails to produce either a waiver of confidentiality or proof

11   of death?  Second, does the invocation of the *Glomar* response by FBI and DEA in this case

12   provide a suitable basis for the court to adjudicate the matter before it?  Based on the discussion

13   that follows, the court will answer both questions in the negative.

14          ***A. Blanket use of Glomar Response to FOIA Requests Lacking Waivers of Privacy***

15          While the <u>Wilner</u> court described the application of the *Glomar* doctrine as properly

16   invoked where the agency's refusal to respond is "tethered" to one of the nine FOIA exemptions,

17   that description must be understood as dictum inasmuch as the court in <u>Wilner</u> based its analysis

18   on the National Security Agency's reliance on FOIA exemption (b)(1), permitting non-disclosure

19   of records that specifically authorized under executive order to be kept secret, and exemption

20   (b)(3), exempting records that are "specifically exempted from disclosure by statute."  <u>Wilner</u> 592

21   F.3d at 71.  Pursuant to <u>Wilner</u>, the nature of the "tethering" required means that the exemption

22   invoked must be more than simply a reason to not disclose records.  It must be true that the

23   disclosure of the *existence* records responsive to the requesting party would cause a harm that the

24   FOIA exemption is intended to prevent.  <u>Id</u>. at 70.

25          The understanding the court derives from Defendant's proffered undisputed material facts

26   is that DEA and FBI, at the time Plaintiff filed his FOIA requests, refused as a matter of policy any

request for production of records pertaining to third parties where the requesting party failed to produce waivers of confidentiality. As mentioned, Defendants rely on FOIA exemptions (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(F) to justify the *Glomar* response of both FBI and DEA with regard to Plaintiff's FIOA requests pertaining to Olaes and Ahlo. The question for the court then, is whether the disclosure of the possible *existence* of records, the contents of which may be exempt on the grounds of privacy privilege, would likely give rise to a harm cognizable under these FOIA exceptions. Under the facts of this case, the answer is clearly "no."

With regard to the primary privacy exemptions, (b)(6) and (b)(7)(C), both our case law and the statutory language of the FOIA privacy exemptions contemplate requests for information pertaining to third parties where the waiver of privacy is not obtained. The FOIA, exemptions (b)(6) and (b)(7)(C), both require that courts apply balancing tests to determine whether the public interest in disclosure would counterbalance the private interest in privacy. Ely v. FBI, 781 F.2d 1487, 1490 (11 Cir. 1986). If agencies could refuse to acknowledge the existence of responsive records pertaining to third persons based on the failure of the requesting party to provide waivers of privacy, the requirement for balancing the private interests of privacy against the public interest in disclosure would be a nullity. Because privacy interests are not absolute under these exemptions, an agency cannot categorically refuse to undertake the search for such records or at least afford the requesting party the opportunity to meaningfully oppose the non-disclosure of the records based solely on those exemptions. See, e.g., Lame, 654 F.2d at 928 (appellate court refuses to approve assertion of *glomar* response where each responsive document and its asserted exemption must be individually explained under exemption (b)(7)(C)).

As noted, FBI does not appear to have resorted to exemption (b)(7)(D) to justify its refusal to confirm or deny the existence of records pertaining to Ahlo or Olaes. Nonetheless, to the extent the court may have misinterpreted FBI's argument, the following is intended to apply to both FBI and DEA. Exemption (b)(7)(D) exempts from disclosure:

> the identity of a confidential source and, in the case of a record compiled by a
> criminal law enforcement authority in the course of a criminal investigation, or by

an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source . . . .

5 U.S.C. § 552(b)(7)(D).  "Unlike the Section 7(C) privacy exemption, the Section 7(D) exemption does not require any balancing.  If the information would reveal the identity of a confidential source, or confidential information given only by a confidential source, the information may be withheld without any consideration of the public interest." Lame, 654 F.2d at 923.

Notwithstanding the fact that the protection of the identity of confidential sources under FOIA exemption (b)(7)(D) is categorical if it is applicable, the disclosure of the mere *existence* of records responsive to Plaintiff's FOIA request pertaining to Olaes and Ahlo does not create any harm cognizable under that exemption because, at its broadest, Plaintiff's request asked for all records in possession of FBI or DEA pertaining to those third parties.  The disclosure of the existence of records pertaining to a third party does not identify that third party as a confidential source.  Nor does the disclosure of the existence of records pertaining to these third parties transmit any information about the nature of any confidential or secret process or agency operation. Although Plaintiff's FOIA request contains references to  information pertaining to Olaes's and Ahlo's activities as governmental witnesses and informants, such requests are made within the broader context of Plaintiff's request for all records pertaining to the two third parties.  See Exhibits "G" and "L" to Declaration of Peggy L. Bellando, Doc. # 55.

Further, although both the identity and information provided by a confidential source may be categorically exempt from disclosure under exemption (b)(7)(D), the fact of the confidential nature of the informant "is a question of fact to be determined in regard to each source." Lame, 654 F.2d at 923.  A source is confidential "'if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" Id.  While information that is exempt under (b)(7)(D) does not lose its confidential nature if a portion of it is publically disclosed, id. at 925, the fact of some types of disclosure of information from a source, such as testimony at trial, "may be evidence of the fact that there has been no assurance of confidentiality given by the government." Id.  Thus, at minimum, Plaintiff is

entitled to challenge Defendants' invocation of FOIA exemption (b)(7)(D) and such challenge, the court finds, would be unduly disadvantaged by the refusal of the agencies to disclose even the existence of records responsive to Plaintiff's request.

Finally, to the extent an agency produces specific documents it possess pursuant to discovery in the underlying criminal case, that agency cannot refuse to acknowledge the existence of those same documents in response to a subsequent FOIA request. Wilner, 592 F.3d at 70. Thus to the extent any of the documents that were provided to Plaintiff during discovery in the underlying criminal proceeding were documents that would have been responsive to Plaintiff's FOIA requests, the existence of those documents may not now be denied.

FOIA exemption (b)(7)(F) is intended to protect disclosure of information where the disclosure of the information "could reasonably be expected to endanger the life or physical safety of any individual." The court notes that Defendants' argument with regard to exemption (b)(7)(F) as set forth in their motion for summary judgment is aimed primarily at the exemption of names or identities of law enforcement officers involved in various aspects of the investigation relating to Plaintiff. To the extent Defendants intend to apply exemption (b)(7)(F) to records pertaining to Olaes and Ahlo based on the reasonable expectation that either would be subjected to endangerment to their lives or physical well being, that application fails for essentially the same reason that exemption (b)(7)(D) is inadequate to support FBI's and DEA's *Glomar* responses. As is the case with exemption (b)(7)(D), exemption (b)(7)(F) does not require a balancing test. Nonetheless, it is evident that Defendants have failed to show that the acknowledgment of the *existence* of records responsive to Plaintiff's FOIA requests would cause the harm prohibited by the exemption; that is, would endanger the lives of Olaes or Ahlo.

The court concludes that DEA and FBI have failed to show a statutory basis for application of the *Glomar* response based on the FOIA exemptions they relied upon in refusing to confirm or deny the existence of records, or to conduct a search to determine the existence of records responsive to Plaintiff's request for information pertaining to Ales and Ahlo.

### B.  *Adequacy of Record for District Court's Review*

A district court ruling on government's claims of exemption under FOIA must have sufficiently particularized information with regard to the application of the claimed exemption to each record for which exemption is claimed to base its ruling.  Church of Scientology v. U.S. Dept. Of Defense, 611 F.2d 738, 742 (9th Cir. 1979).  The court notes that a substantial amount of documentation has been provided by Defendants with regard to information that was withheld by DEA and FBI regarding information requested by Plaintiff pertaining to himself.  The court can find no particularized information regarding information requested by Plaintiff from DEA or FBI files concerning Olaes and Ahlo.  While it is possible the court may have overlooked something in the information provided by Defendants, the court must proceed on the conclusion that Defendants have provided no information other than the assertion that no search was performed for the requested files based on Plaintiff's failure to produce waivers of privacy from the subjects of the search or proofs of death.

A district court may only award summary judgment to an agency invoking exemption if "the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed."  King, 830 F.2d at 217.  "[A]ffidavits cannot support summary judgment if they are 'conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'"  Id. at 219 (quoting Allen v. CIA, 205 636 F.2 1287, 1291 (D.C. Cir. 1980));  While courts focus on the substance of the information provided by an agency to justify its exemption of requested information, and not on its form, Gallant v. Nat'l Labor Relations Bd., 26 F.3d 168, 172 - 172 (D.C. Cir. 1994), the purpose of the agency's submission of information justifying exemption is to permit the plaintiff "a meaningful opportunity to contest, and the court an adequate opportunity to review the soundness of the withholding."  Wiener v. FBI, 943 F.2d 972, 977 (9 Cir. 1991); see also, Fiduccia, 185 F.3d at 1044 ("What matters is the substantive adequacy of the disclosure, in whatever form, to enable the requester to be able to made an

intelligent judgment whether to contest claims of nondiscoverability and the court to decide them").

The court need not belabor its analysis of whether the justifications offered by FBI or DEA are sufficient for the purposes of Plaintiff's opportunity to oppose or the court's need to assess because the agencies have offered essentially no record-specific justifications.  Simply put, the agencies cannot support their refusal to confirm or deny the existence of the records requested on the grounds of privacy or protection of identity of confidential informants because the exercise of those exemptions, as well as the exemption for protection of persons from probable death or physical harm, require record-specific explanation and justification to the court.  See Lame, 654 F.2d at 928 ("Each document and its asserted exemption must be individually explained in terms of privacy or confidentiality").  Such explanation is not to be found on the record before the court.

The court will deny Defendants' motion for summary judgment with respect to Plaintiff's second and third claims for relief.  The denial will be without prejudice and it should be understood that the court's decision is based solely on procedural, rather than substantive, concerns.  The court's denial of Defendants' summary judgment with respect to the second and third claims for relief in no way implies any opinion by the court as to whether the exemptions claimed with respect to information pertaining to Ahlo or Olaes would or would not be justified were the record before it adequate.

The court, recognizing that it is substance rather than form that is important is determining whether exemption from disclosure under FOIA is warranted, will leave it to Defendants to decide the form of information they wish to provide to justify their claims of exemption with respect to information concerning Olaes or Ahlo.  The court will caution Defendants, however, that consideration of information *ex parte* and *in camera* is appropriate only where the exemptions cannot be justified on the basis of information that can be made available by public affidavits, Vaughn indices, or the like.  Wilner, 592 F.3d at 75 - 76.

36

THEREFORE, in accord with the foregoing discussion, it is hereby ORDERED that:

1.  Defendants' motion for summary judgment with respect to Plaintiff's first claim for relief under the Privacy Act is hereby GRANTED in its entirety with respect to all Defendants.

2.  Defendants' motion for summary judgment with regard to Plaintiff's second and third claims for relief under FOIA is hereby DENIED without prejudice.

3.  Defendants may file and serve a second motion for summary judgment not later than twenty-eight (28) days from the date of service of this order or may move for such scheduling changes as may seem necessary by that date.

IT IS SO ORDERED.

Dated:    July 21, 2010

_____

CHIEF UNITED STATES DISTRICT JUDGE