1
2
3
4
5
6

# IN THE UNITED STATES DISTRICT COURT

7

## FOR THE EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| 9  **MICHAEL F. SCHULTZ.,** | **1:05-cv-0180 AWI GSA** |
| 10  **Plaintiff,** | |
| 11  **vs.** | **MEMORANDUM OPINION AND ORDER ON MOTION OF DEFENDANT FBI FOR SUMMARY JUDGMENT** |
| 12  **FEDERAL BUREAU OF INVESTIGATION, DRUG ENFORCEMENT ADMINISTRATION, UNITED STATES MARSHALS SERVICE and DEPARTMENT OF JUSTICE,** | |
| 13 | |
| 14 | |
| 15 | **Doc. #'s 138 & 148** |
| 16  **Defendants.** | |

17
18
19

      This is an action by plaintiff Michael F. Schultz ("Plaintiff") pursuant to the Freedom of

20

Information Act ("FOIA") 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a, against

21

defendants Federal Bureau of Investigation ("FBI") the Drug Enforcement Administration

22

("DEA"), the United States Marshals Service and the Department of Justice.  At this point in the

23

proceedings, FBI is the sole remaining Defendant and Plaintiff's claim pursuant to FOIA is the

24

only remaining claim.  Currently before the court is the motion of FBI for summary judgment as

25

to Plaintiff's FOIA claim.  For the reasons that follow, FBI's motion for summary judgment will

26

be granted.  The court will also deny as moot Plaintiff's motion to amend at Document Number

27

148.  Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this

28

court.

### PROCEDURAL HISTORY

Plaintiff's original complaint was filed on February 9, 2005, and was amended on July 6, 2005. All Defendant parties moved for summary judgment on July 13, 2007. There followed a long series of extensions of time to file various briefs and a stay of proceedings imposed upon motion of Plaintiff. Following the lifting of the stay, Defendants re-noticed their motion for summary judgment on August 29, 2008. The court issued a memorandum opinion and order on July 22, 2010, (the "July 22 Order") granting in part and denying in part Defendants' motions for summary judgment. Doc. # 86. The court's July 22 Order granted summary judgment as to Plaintiff's claims under the Privacy Act as to all Defendants, but denied summary judgment as to Plaintiff's claims under FOIA upon finding that Defendants had failed to provide sufficient particularized information to allow the court to determine the applicability of exemptions to the general duty of federal agencies under FOIA to provide the documents requested. See Doc. # 86 at 35:14-36:2.

Defendants' next motion for summary judgment was filed on September 13, 2010. Doc. # 89. In their September 13 Motion, Defendants asserted their contention that Department of Justice ("DOJ") is the only proper party defendant in this case and that the constituent agencies FBI, DEA and U.S. Marshals Service should be dismissed. Defendants also reasserted their contention that their "Glomar"[1] responses to Plaintiff's FOIA requests were appropriate. On July 2, 2012, the court issued a memorandum opinion and order denying the motion for dismissal of FBI, DEA and U.S. Marshals Service and ordering Defendants to file a further dispositive motion in light of the recent Ninth Circuit decision in Pickard v. Dep't of Justice, 653 F.3d 782 (9th Cir. 2011). Doc. # 111.

Defendants filed their next motion for summary judgment on October 26, 2012. Doc. # 114. The legal theory advanced by Defendants in their October 26 Motion was that the

---

[1] The "*Glomar*" response is the term applied to a response by a governmental agency that "neither confirms nor denies" the existence of records responsive to a FOIA request. See Phillippi v. CIA, 546 F.2d 1009, 1011 (D.C. Cir. 1967) (upholding the refusal of defendant CIA to confirm or deny the existence of a ship called the *Glomar Explorer*).

Defendant agencies were not required to provide documents responsive to Plaintiff's FOIA request or to provide a Vaughn index showing the reasons for the withholding because the documents requested were subject to categorical exclusion based on the nature of the documents themselves. See generally. Doc. # 114 at 12-15.  Defendant DEA argued in the alternative that it had no obligation to continue to identify documents responsive to Plaintiff's FOIA request because Plaintiff had failed to pay or promise to pay the statutory search and processing fee.  On October 29, 2014, the court issued an order denying summary judgment as to DEA and FBI finding that categorical exemptions could not be applied based on the information and representations then before the court.  See Doc. # 129 at 11:20-26.  The court correspondingly granted Plaintiff's motion to compel production of Vaughn indexes by Defendants.  The court inadvertently did not address DEA's alternative ground for its motion for summary judgment in its October 29 Order.  Defendant DEA moved for reconsideration of the court's order denying summary judgment as to it on December 10, 2014.  DEA's motion for reconsideration was granted by the court order dated September 29, 2015.  Currently, the only claim remaining in this action at this point is Plaintiff's FOIA claim against FBI.

FBI filed notice of production of their Vaughn index on April 10, 2015.[2]  On April 28, 2015, Plaintiff filed an objection to FBI's Index based on FBI's claims of categorical exemptions and requested an "Adequate Vaughn Index."  FBI's instant motion for summary judgment was filed on May 22, 2015.  On June 6, 2015, Plaintiff filed two motions during the pendency of Defendant's motion for summary judgment; the first was to compel production of an Index by former Defendant DEA, and the second was to hold the motion for summary judgment in abeyance until rulings were issued on Plaintiff's motion to compel production of an Index from DEA and a motion for more complete Index by Defendant FBI.  Both motions were denied by a court order filed on September 29, 2015.

---

[2]  The court either did not receive or misplaced the Vaughn index that was purportedly produced on April 10, 2015.  The court therefore directed re-filing of the index on September 8, 2015, and received same on September 14, 2015.  Hereinafter, the Vaughn index produced on September 8, 2015 is referred to as the "Index."

**FACTUAL ALLEGATIONS – DEFENDANT'S PROFFER OF UNDISPUTED FACTS**

Defendant FBI has filed its proffer of Undisputed Material Facts ("UMF's") at Document Number 138-7.  Plaintiff has filed no response to Defendant's proffer, but has made clear the basis of his objections to Defendant's motion for summary judgment in other pleadings.  For the most part, the facts set forth in Defendant's proffered UMF's have been alleged previously, are familiar to both parties and are largely not contested.  However, there are a few UMF's that are central to this discussion and that merit particular mention.

At issue in this action is Plaintiff's request under FOIA for information held by the FBI concerning two persons who allegedly functioned as paid informants in the investigation of Plaintiff by FBI and former defendant Drug Enforcement Agency ("DEA").  With regard to these two persons, Shane K. Ahlo and Steven Polanco Olaes, Defendant's UMFs allege Plaintiff Requested:[3]

> all records related to [Ahlo's and Olaes's] criminal history; cases in which [either] testified under oath; instance in which the FBI intervened on [their] behalf to help [them] "avoid criminal and/or tax problems or prosecutions;" any administrate sanctions imposed on [either] for "any dishonesty, false claims, or other deceit or behavior that FBI has deemed inappropriate;" agents' notes; and electronic and photographic surveillance evidence.  Plaintiff alleged that [Olaes and Ahlo were] paid FBI informant[s] with criminal record[s] and that "the records involved in this request will shed light on the controversial use of paid informants and contingent fee arrangements by Law Enforcement Agencies, which is clearly in the publics [sic] interest."

Doc. # 138-7 at 3:3-11 (quoting portions of Plaintiff's First Amended Complaint).

Defendant's UMF's describe in some detail the document filing and information retrieval system used by Defendant FBI.  The details of that system are not critical to Defendant's motion to dismiss and have not been the focus of Plaintiff's action.  However, one aspect of Defendant FBI's response to Plaintiff's FOIA requests requires comment.  While Plaintiff's FOIA request was open-ended with regard to dates of documents and with regard to the context in which the

---

[3]   Plaintiff's requests for information under FOIA requested identical categories of information as to Ahlo and Olaes but in different places.  The two requests are combined here for the sake of brevity.

requested documents were generated, the documents recovered by Defendant FBI that pertain to Ahlo and Olaes were confined to documents generated within the time period of, and in connection with, the investigation of Plaintiff by FBI.  See Doc. # 138-2 at 11 (explaining FBI's approach to requests for information on third parties who have not consented to disclosure).

Defendants allege their search of relevant data bases, subject to the above-mentioned limitations, identified 1,196 pages of documents and one CD pertaining to Ahlo and/or Olaes. Defendants have produced an Index that they contend expresses the applicable exemptions for each document or collection of documents and the contents of the documents that they contend warrant the application of the exemptions. Doc. # 147-2.   As Plaintiff has observed, the Index does not address the contents of each page and, in many cases, aggregates a substantial number of documents that are similar (for example multiple completed versions of the same fill-in form) and asserts the same exemptions apply to all similar completed forms.  FBI's central contention in its motion for summary judgment is that the information requested through Plaintiff's FIOA requests is subject to categorical exemption pursuant to FOIA exemptions set forth at 5 U.S.C. §§ 552(b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  FBI's current policies regarding the application of these exemptions is explained at pages 12 through 21 of the Declaration of David Hardy, Doc. # 138-2 ("Hardy Dec.").

The only fact alleged by Defendant in this the third motion for summary judgment that has not been either alleged or discussed in previous motions is the fact that neither Ahlo nor Olaes testified for the prosecution at Plaintiff's trial.  UMF # 98.  Plaintiff called only Olaes as a defense witness.  UMF # 99.

//

//

//

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial."  Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).

> "FOIA Cases typically and appropriately are decided on motions for summary judgment." *See e.g., Higgins v. U.S. Dep't of Justice*, 919 F.Supp.2d 131, 139 (D.D.C. 2013) (internal quotations omitted).  To obtain summary judgment, a defendant agency must establish that it has conducted an adequate search for responsive records, that each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure, and that it has not withheld any reasonably segregable information. *See Wiesberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C.Cir. 1980); *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 12 (D.C.Cir. 2014).  [S]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Halpern v. CIA*, 629 F.2d 144, 148 (D.C.Cir. 1980).

Cobar v. U.S. Dep't of Justice, 81 F.Supp.3d 64, 71 (D.D.C. 2015).

**DISCUSSION**

**I.      Scope of Disclosure and Reasonable Search for Responsive Documents**

For purposes of this action, Plaintiff's requests pursuant to FOIA sought information on

persons he acknowledged were paid informants under the employ of Defendant.  FOIA provides

"that when 'informant records maintained by a criminal law enforcement agency under an

informant's name or personal identifier are requested by a third party according to the

informant's name or personal identifier, the agency may treat the records as not subject to the

requirements of [FOIA], unless the informant's status as an informant has been officially

confirmed.' [Citation.]" Cobar v. Dep't of Justice, 953 F.Supp.2d 1, 4 (D.C. 2013) (quoting 5

U.S.C. § 522(c)(2)).  However, "'[w]here an informant's status has been officially confirmed, a

*Glomar* response is unavailable and the agency must acknowledge the *existence* of any

responsive records it holds.' [Citation.]"  Pickard v. Dep't of Justice, 653 F.3d 782 (9th Cir.

2011) (quoting Boyd v. Criminal Div. of U.S. Dep't of Justice, 475 F.3d 381, 389 (D.C. Cir.

2007) (italics added).

It bears emphasis that section 522(c)(2) establishes an *exclusion* from acknowledgement,

not an exemption from disclosure.  See Rahim v. FBI,  947 F.Supp.2d 631 (E.D. La. 2013) ("An

'exclusion' is different from an exemption in that the Government need not even acknowledge

the existence of excluded information.").  Thus, official confirmation of a governmental

informant with regard to a particular investigation can be characterized as a partial waiver of

only the most extreme of privacy right against disclosure of the *existence* of responsive

information.  Two considerations flow from this characterization.  First, it is clear that official

confirmation of an informant has no waiver effect on the right of the government to withhold

responsive documents otherwise subject to any applicable *exemption*. See Pickard, 653 F.3d at

786.  Second, case authority indicates that the scope of waiver resulting from official

confirmation is no broader than the involvement of the confidential informant in the

investigation that is the object of the requesting party's FOIA inquiry.  See id. (observing that

waiver of the right of non-acknowledgment under section 552(c)(2) only operates if the

requested information matches the information previously disclosed, including the effective time

period of the previous disclosure); Rahim 81 F.Supp.2d at 646-647 (observing that an alleged

confidential informant is not "officially disclosed" in one case based on the official confirmation

of that informant's status in a prior case).  This limitation of the application of the concept of

waiver to information that the government would otherwise not be required to acknowledge fits

with the common sense notion that the government should not be required to lay open all of its

dealings with a confidential informant based only on a single instance in which the informant's

status is officially confirmed for the limited purpose of a particular prosecution.

        The court concludes that Defendant acted lawfully in limiting the search for records

pertaining to Olaes and/or Alho to those records that were generated as part of investigation and

prosecution of the case against Plaintiff.  From a practical perspective, this means that Defendant

is obliged to acknowledge the existence of responsive records that contain, for example, the

criminal history of either Alho or Olaes that were generated during the investigation and

prosecution of Plaintiff's criminal case but not similar documents that may have been generated

either before or after the involvement of the two informants in the investigation and prosecution

of Plaintiff.

## II.     Exemptions

Defendant has produced an Index of documents that are responsive to Plaintiff's FOIA

request and has listed individual documents or groups of documents indicating what exemption

or exemptions are being invoked and the contents of the documents that justify reliance on these

exemptions.  As noted above, the Index produced by Defendant is organized at the level of the document, not the page.  Thus, each set of exemptions that are asserted, are asserted with regard to a document consisting of one to several pages.  Further, where Defendant's search recovered multiple documents of the same type, for example memoranda of interviews of confidential sources, the Bates page ranges and the dates of each of the documents are listed separately but the exemptions asserted and the description of the contents justifying the application are set forth only once for that type of document.

As noted, it is not disputed that Defendants search pursuant to Plaintiff's FOIA request resulted in the collection of 1,196 pages.  By the court's estimation, these 1,196 pages comprise approximately 342 individual documents.  Defendants contend that each of the approximately 342 documents is exempt from disclosure in response to a FOIA request by operation of between two and four statutory exemptions.[4]  The exemptions that are applicable to requests pursuant to FOIA that may be applicable to documents generated as a result of law enforcement activities are found at 5 U.S.C. §§ 552(b)(7).  The exemptions that are by far the most commonly invoked by Defendant are the exemption set forth at 5 U.S.C. §§ 552(b)(7)(D) and (C).

### A.  *Exemption 7(D)*

Subsection 552(b)(7) lists a total of six exemptions that are applicable to various aspects of

---

[4]     In its moving papers, Defendant indicates that by grouping similar documents together where, for example, the same form was filled out each time the same event, such as an interview of a confidential source occurred, Defendant is entitled to the "categorical" application of the claimed exemptions to all of the individual records in the group.  At least this is what the court understands by Defendant's use of the term "categorical."  The court is leery of the casual use of potentially important but ambiguous terms such as "categorical" without taking some care to be appropriately specific in their use.  See Powell v. U.S. Dep't of Justice, 584 F.Supp. 1508, 1525 (N.D. Cal. 1984) (expressing doubt as to government contentions as to the use of "categorical" exclusions of documents).  In the analysis that follows, the court will affirm Defendant's withholding groups of documents that have been grouped together based on the fact that each documents contain the same *type* of information (such as information from a confidential informant), which is exempt from FOIA disclosure under the same statutory exemption – for example, exemption 7(D).  In so doing the court does not intend to endorse any particular notion of "categorically exempt" information.

criminal investigation and prosecution.   The exemption found at subsection 7(D) is of particular

relevance to Plaintiff's FOIA requests because the exemption is the one most commonly invoked

by Defendant, and because it is an exemption that does not require a balancing of the public's

interest in the information requested against the privacy interest of the subject of the information.

Pursuant subsection 552(b)(7)(D), otherwise responsive documents are exempt from production

if they "'could reasonably be expected to disclose the identity of a confidential source . . . and, in

the case of a record or information compiled by criminal law enforcement authority in the course

of a criminal investigation . . . [the] information furnished.'"   Cobar v. U.S. Dep't of Justice, 81

F.Supp.3d 64, 71 (D.D.C. 2015) (quoting statute).

Among the FOIA exemptions requiring no balancing of privacy interests, "[e]xemption

7(D) differs from other FOIA exemptions in that its applicability depends not on the specific

factual contents of a particular document; instead, the pertinent question is whether the

information at issue was furnished by a 'confidential source' during the course of a legitimate

criminal law investigation."   Leshar v. U.S. Dep't of Justice, 636 F.2d 472, 492 (D.C. Cir. 1980).

Thus, "[e]xemption 7(D) protects two distinct types of information: (1) information that 'could

reasonably be expected to disclose the identity of a confidential source'; and (2) [the]

'information furnished by a confidential source.'"   Cobar, 81 F.Supp.3d at 72.   Significantly, the

two "prongs" of subsection 7(D) operate independently, and the protection afforded as to the

information provided by a confidential source is not lessened if the identity of the confidential

source is officially disclosed or is known to the requester.   See id. at 73 ("an agency may

continue to withhold information from a source has been revealed to the requester or when the

requester knows the source's identity").

Case authority has repeatedly confirmed that FOIA exemption 7(D) is the primary means by

which Congress realized its intention to provide the broadest extent of protection to the

-10-

relationship of criminal investigative agencies and the confidential sources upon which they depend.  See Irons v. FBI, 880 F.2d 1446, 1451-1452 (1st Cir. 1989) (noting the efforts of Congress in 1974 and 1986 as reflected in the Congressional Record to "'broaden the reach of this exemption and to ease considerably a Federal law enforcement agency's burden in invoking it.'").  The Irons court specifically addressed the scope of subsection 7(D) in the situation where the confidential source is disclosed through testimony at trial by addressing the issue of whether the testimony of a confidential informant during a trial *waived* any or all of the protections of exemption 7(D).  At the time of the decision in Irons, variations among courts in the judicial application of waiver doctrine to exemption 7(D) resulted in uneven application of the exemption between jurisdictions.  See Irons 880 F.2d at 1456-1457 ("the judicial effort to create a 'waiver' exemption runs afoul of the statutes 'intent to provide "workable" rules.'").  After consideration of a representative collection of judicial attempts to apply the concept of "waiver" to the ability of law enforcement agencies to withhold information under exemption 7(D), the Irons court held:

> [T]hat public testimony by "confidential sources" cannot "waive" the FBI's right under the second clause of exemption 7(D) to withhold "information furnished by a confidential source" and not actually revealed in public.  For basically similar reasons, the first clause of exemption 7(D), protecting information that could reveal "the identity of a confidential source," is not waived (notwithstanding subsequent public testimony by the source), insofar as disclosure of information not contained in the public testimony could confirm the source's identity as to some information, or could reveal the source's identity as the provider of other not-yet-disclosed information.  Consequently, the plaintiffs are not entitled to information furnished to the FBI by confidential sources, beyond what has been actually disclosed in the source's prior public testimony.

Id. at 1456-1457.

As a threshold matter, there is no dispute that Olaes an Alho functioned during the time applicable to Plaintiff's FOIA request as *confidential* informants.  Plaintiff has labeled them as such and the court has no reason to find otherwise.  Also as an initial matter, there is no dispute

that Olaes and Alho provided information to FBI in connection with a lawful criminal

investigation.  Thus, Defendant has satisfied at least the preliminary requirements for application

of exemption 7(D).  In addition, to the extent that it is Plaintiff's contention that there is some

information withheld by Defendant that was actually testified to at trial and therefore not

protected by subsection 7(D), Plaintiff has failed to provide any indication of what may have

been disclosed through testimony at trial.[5]  The court must therefore presume that nothing other

than the names of the confidential informants were officially disclosed. Therefore, the court must

conclude that subsection 7(D), when applied to the documents identified by Defendants justifies

the withholding of all information except for the names of the two paid confidential informants.

Examination of Defendant's index of responsive document reveals that Defendants

invoke subsection 7(D) to justify the withholding informant-generated information in all but six,

or 336, of the 342 responsive documents.  Defendant's Index indicates that, of the 336

documents that were withheld on pursuant to exemption 7(D), *each* of these documents

contained, at minimum, the names and permanent identification numbers or symbols of one or

more confidential informants. In addition, of the approximately 336 documents that Defendant

withheld pursuant to subdivision 7(D), all but approximately 35 also contain *information* or

work product that is described by in the index as being provided, directly or indirectly, by

confidential sources.  Thus, Defendant argues that all 336 documents were properly withheld

because they contained information satisfying the first prong of the exemption criteria – they

contain information that could disclose permanent identifying numbers or symbols -- of

---

[5]    Elsewhere in his pleadings, Plaintiff alleges that he knows the amount that Olaes was paid and knows Olaes permanent numerical identification designation.  There is no indication, however, that either of these "facts" were acknowledged, either officially or unofficially at trial.  In any event, possessing such knowledge, even if it had been disclosed officially, would entitle Plaintiff to no more information than is already known to him or available through trial transcripts.

subsection 7(D), and approximately 320 of those documents were properly withheld because they contained information satisfying both the first and second exemption criteria of subsection 7(D).

"The court may grant summary judgement based solely on information provided in an agency's affidavits or declarations if they are relatively detailed and when they describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Strunk v. U.S. Dep't of Interior, 752 F.Supp.2d 39, 42-43 (D.D.C. 2010) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Agency affidavits or declarations are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents. Rahim v. FBI, 947 F.Supp.2d 631, 638 (E.D. La. 2013) (internal quotation marks and citation omitted).

The court finds that Defendant, to the extent it has described documents in the Index as containing the phrase "information provided by a confidential source" or "interviews with a confidential source," or equivalent description, has described such documents adequately to justifying the withholding of such documents under Exemption "(7)(D). As discussed above, this exclusion is applicable to the majority of documents listed in Defendant's Index. Further, to the extent Defendants have described responsive documents as containing "confidential source symbol numbers" or the equivalent, the court finds that Exemption 7(D) applies so as to justify the withholding of at least the informant-identifying features of the documents. The court will address the issue of segregability of other information *infra*.

**B. Exemptions 6/7C**

Defendants Index invokes the exemptions found at 5 U.S.C. §§ 552(b)(6) and (7)(C). These

two exemptions enable an agency to withhold information where the disclosure of the information would unreasonably intrude on the personal privacy of the subject of the information.  Exemption (b)(6) prevents disclosure of such disclosure "would constitute a *clearly unwarranted* invasion of personal privacy."  Id. (italics added).  Exemption (b)(7)(C) prevents disclosure of records "compiled for law enforcement purposes" where the production of such records would "constitute an unwarranted invasion of personal privacy."  Id.  Because the exemption under subsection (b)(6) is more restricted than under subsection (b)(7)(C), and because it is not disputed that the information sought and withheld was compiled for law enforcement purposes; the court need only consider whether the requested material was properly withheld pursuant to exemption (7)(C) since any information withheld because it would cause an unwarranted invasion even if it does not qualify for withholding under subsection (b)(6).  See Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1173 (D.C. Cir. 2001) (applying standard appropriate to exemption (b)(7)(C) where government claimed exemptions under both (b)(7)(C) and (b)(6)).

"Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure."  Nat'l Archives & Records Adm. V. Favish, 541 U.S. 157, 172 (2004) ("Favish").  "To determine whether disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy' for purposes of Exemption 7(C), we must 'balance the privacy interests that would be compromise by disclosure against the *public* interest in release of the requested information.' [Citation]."  Roth, 642 F.3d at 1174 (quoting Davis v. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)) (italics added).  Where, as here, the requesting party has a personal stake in the information requested that "personal stake in the release of information is 'irrelevant' to the balancing of public and third-party privacy interests required by Exemption

7(C)."[6]  Id. at 1177.  "[N]ot only the targets of law-enforcement investigations, but also 'witnesses, informants, and . . . investigating agents' have a 'substantial interest' in insuring that their relationship to the investigation 'remains secret.'  [Citation]"  Roth, 642 F.3d at 1174 (quoting Davis, 968 F.2d at 1276).  There the subjects of Plaintiff's FOIA request – Ahlo and Olaes – have substantial privacy interests to protect.  In determining whether the public' interest is sufficient to overcome the subject's privacy interests, the court must ask whether: (1) "'The public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) whether the information [sought] 'is likely to advance that interest.'  [Citation.]"  Id. at 1175 (quoting Favish, 541 U.S.at 172 (2004)).

In prior orders, the court has speculated that a public interest could arise from the government's failure to comply with the requirement for disclosure of exculpatory evidence as established by Brady v. Maryland, 373 U.S. 83, 87 (1963).  In Roth the appellate court considered whether there was a significant public interest in the possible commission of a Brady violation or of the conviction of a person who was actually not guilty.  The Roth court found that both concerns give rise to a public interest, but that the interest is broader with regard to the possibility of wrongful conviction in a capital murder case.  See Roth 642 F.3d at 1176 (contrasting the two public interests).

The court's prior speculation that a Brady issue could arise from the facts of this case was based to a significant extent on the court's supposition that Olaes and/or Ahlo had testified for the government during the government's case in chief.  Plaintiff's admission that only Olaes

---

[6]     In Powell v. U.S. Dep't of Justice, 584 F.Supp. (N.D. Cal. 1984), the district court cited case authority for the application of FOIA exemption 6, which included consideration of the plaintiff's interest in disclosure.  The district court then went on to analyze the application of exemption 7(C) without restating the standard.  A review of the court's decision does not indicate that the court used the plaintiff's interest in disclosure as a factor in the balancing test where exemption 7(C) is at issue.  This court will follow Roth.

testified, and then only as a witness called by the defense in the defense's case in chief

substantially undercuts the proposition that a <u>Brady</u> issue could arise from the facts of this case.

Generally, a <u>Brady</u> issue arises where the prosecution seeks conviction based on the testimony of

a witness who would be shown unreliable under facts not disclosed by the prosecution, or based

on evidence presented at trial that could be controverted by information not disclosed by the

prosecution.  Neither situation appears to have been the case at Plaintiff's criminal trial since the

prosecution did not rely at all on testimony by either Olaes or Alho.  Neither is it alleged by

Plaintiff, that information known to the prosecution would have, if disclosed at trial, have

undercut or negated any of the facts upon which Plaintiff's conviction was based.

"Since the right to the disclosure of material, exculpatory evidence recognized in *Brady*

protects a defendant's right to a fair trial, *see Brady*, 373 U.S. at 87 [. . .], the determination of

whether information is 'material' for purposes of *Brady* focuses on how the information relates

to other information known at the time of trial." <u>Roth</u>, 642 F.3d at 1175.  "The question is not

whether the defendant would more likely than not have received a different verdict with the

evidence [discoverable through FOIA], but whether in its absence [the defendant] received a fair

trial, understood as a trial resulting in a verdict worthy of confidence." <u>Kyles v. Whitley</u>, 514

U.S. 419, 434 (1995).

Plaintiff has consistently maintained that the disclosure of information pertaining to Ahlo

and Olaes is important to the satisfaction of the public's interest in misconduct perpetrated by the

FBI branch office in Hawaii.  How the allegation of misconduct of FBI agents during an

investigation gave rise to a <u>Brady</u> violation in Plaintiff's case has never been entirely clear.  The

court has reviewed declarations filed by Plaintiff with his amended complaint, Doc. # 11, and

filed with his opposition to Defendant's motion for summary judgment.  Doc. # 78.  Interpreting

these documents liberally, the court concludes that Plaintiff's line of reasoning is something

close to the following:  Plaintiff avers that his conviction was based, in part, on communications

between Plaintiff and Olaes that were intercepted and recorded by FBI agent Maglasang through

a wiretap on Olaes telephone.  Prior to Plaintiff's criminal trial, Plaintiff's attorney moved to

suppress the evidence provided through the wiretap on Olaes telephone pursuant to 18 U.S.C. §§

2511 and 2515.   Section 2515 prohibits the use of information obtained by a wiretap that is

unlawful under § 2511 in any court proceeding.  The government opposed the motion to

suppress on the ground Olaes had acted under color of law when he cooperated with FBI to tap

his telephone and when he instituted communications with Plaintiff which FBI recorded.  The

government therefore contended that the wiretap was not unlawful pursuant to 18 U.S.C. §

2511(2)(d).  Plaintiff's trial court accepted the government's argument and denied the motion to

suppress.

Plaintiff's primary contention appears to be that, had the defense in his criminal case been

forthcoming with information in their possession (and allegedly available pursuant to Plaintiff's

FOIA request), the court would have had a basis to find that Olaes was acting at his own

direction and for his own purposes and not under color of law, and therefore would have had a

basis for granting the motion to suppress the evidence produced by the wiretap.  See Doc. # 78 a

¶¶ 39-46.  Notwithstanding any technical arguments against Plaintiff's theory for suppression of

evidence in his criminal trial, the facts alleged by Plaintiff are not sufficient to state a violation

under Brady.  As noted above, the withholding of evidence violates the command of Brady only

if the evidence that is withheld is both "material" and "exculpatory."  The evidence Plaintiff

claims was withheld was neither.  Plaintiff's motion to suppress at his criminal trial was based

on allegations of misconduct as to FBI agent Maglasang and of criminal conduct as to Olaes, but

those facts, even if true, do not exculpate Plaintiff.  In short, the facts that Plaintiff alleges were

withheld in violation of Brady did not undermine Plaintiff's conviction, they merely would have

provided, at most, a slightly more robust argument for suppression of the facts that were the basis of Plaintiff's conviction.

The court has examined each of Plaintiff's affidavits and concludes that nowhere does Plaintiff allege that facts were withheld by the government that would tend to indicate that Plaintiff was actually innocent of the charges against him.  Essentially, Plaintiff's argument for Brady violation boils down to an attempt to reargue the motion to suppress that was already considered and rejected by the criminal court.  The court concludes that the facts alleged by Plaintiff do not give rise to concerns over a Brady violation.

Plaintiff argues in the alternative that there exists a public interest that overcomes the privacy interests of Alho and Olaes because the evidence requested would show criminal conduct of Olaes with the consent of the FBI, the intervention by FBI in the mitigating state-imposed penalties against Alho, and would show that both Magalsang and the government's prosecuting attorney made false statements at trial that were prejudicial to Plaintiff.  There are two problems with Plaintiff's argument.  First, to the extent that Plaintiff alleges that Defendant facilitated Olaes' own drug dealing, or that Defendant ignored instances of Olaes' theft of drugs from Defendant or other misconduct by Olaes, there is no indication such conduct constitutes "misconduct" in any official sense.  There is nothing revelatory in the proposition that law enforcement agencies such as DEA or FBI permit or even facilitate lesser criminal conduct in order to investigate and prosecute what they determine to be greater criminal conduct.  The same observation applies to Plaintiff's contention that Defendant intervened in Alho's sentence or otherwise obtained favorable treatment for him in exchange for his cooperation as an informant.

Second, to the extent Plaintiff contends that the alleged misconduct by AUSA Sorenson or FBI agent Maglasang are matters of public concern sufficient to overcome the privacy protections of Exemption 7(C), Plaintiff's allegations fall far short of what is required to state a

public interest in official misconduct.  "We hold that, where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure.  Rather, the requester must produce *evidence* that would warrant a belief that a reasonable person that the alleged Government impropriety might have occurred."  Favish, 541 U.S. at 174 (italics added).  Plaintiff's allegations that Sorenson made false or prejudicial statements at Plaintiff's trial or that Maglasang somehow unlawfully conspired to obtain Olaes' cooperation or that she caused Plaintiff's financial information to be misrepresented to the jury are all bare allegations with no offer of evidence.  "'In the absence to the contrary, courts presume that [Government agents] have properly discharged their official duties.' [Citation.]"  Id. (quoting United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926).

"Only when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records."  Id. at 175.  Plaintiff has failed to show there is any concern of a Brady violation and Plaintiff has presented no evidence of official misconduct beyond bare allegations of misconduct.  Plaintiff has therefore failed to show that there exists any public interest in the records he requested.  Because there is no showing of public interest, the privacy interest protected by Exemption 7(C) remain paramount.

### C.  Other Exemptions

In addition to Exemptions 7(D) and 6/7(C), Defendants listed Exemptions 7(E) and 7(F) as being appropriate reasons for the withholding of some of the responsive documents. Exemption 7(E) applies to "records or information compiled for law enforcement purposes" where disclosure would reveal "techniques and procedures for law enforcement investigations or

prosecutions, or . . . guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Exemption 7(F) protects from disclosure information which, if disclosed, could reasonably be expected to result in physical harm to any person.  The court has examined Defendant's Index and concludes that there are no documents listed for which exemption under either 7(E) or 7(F) are claimed where exemption under Exemption 7(C) is not also claimed.  Since the court has determined that Exemption 7(C) applies because the public has no discernable interest in the information requested, it follows that the application of exemption 7(C) to all documents for which that exemption is claimed will necessarily exclude all documents or information that would be subject to exclusion under Exemption 7(F).

That said, the court does take note of Defendant's observation that the methamphetamine importation and sales operation in which Plaintiff was convicted of being a central figure included individuals and a culture that was and is not opposed to the use of deadly force for the purpose of discouraging cooperation with law enforcement.  Thus, although the court need not analyze the applicability of Exemption 7(F) to documents for which that exemption is claimed, the court may look to the purpose of that exemption, the protection of third parties, in making its decision as to the weight of the privacy interests of Alho, Oales and other third party individuals whose private information may be at risk of disclosure.

**III. Segregability**

A review of the documents listed in Defendant's Index shows that either or both Exemptions 7(D) or 6/7(C) are claimed for each of the documents listed.  "Immediately after listing the nine exemptions to the general policy of disclosure, FOIA provides that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions with are exempt under this subsection.'  [5 U.S.C. ] § 552(b)."

Wilkenson v. FBI, 633 F.Supp. 336, 350 (C.D. Cal. 1986).  Having determined that these two

exemptions apply to all of the documents, the court must determine if there remains segregable

information that Plaintiff is entitled to.  In making this determination, it is useful to review with

some precision the categories of information requested by Plaintiff.  As noted above, Plaintiff's

FOIA requests to FBI requested the same categories of information as to both Olaes and Alho.

The court quotes here Plaintiff's FOIA request to FBI as to Olaes with the understanding it

reflects all the information sought with respect to Alho:

> 1.  Criminal history, record of arrest, conviction, warrants or other
> pending criminal cases
>
> 2.  All case names, case numbers and judicial districts, federal, state or
> local, where Mr. Olaes has testified under oath.
>
> 3.  All instances where the Federal Bureau of Investigation has intervened
> on Mr. Olaes behalf to assist him in avoiding criminal and/or tax problems
> or prosecutions.
>
> 4.  All administrative sanctions imposed on Mr. Olaes by FBI for any
> dishonesty, false claims, or other deceit or behavior that FBI has deemed
> inappropriate.
>
> 5.  Agent's notes (including Special Agents: Cindy Maglasang and
> Terrence Chu from Honolulu, Hawaii), documents, reports, memorandas
> [sic], letters, electronic files, database references; "Do Not File" files,
> "P&C" files, photographs, audiotape &video tapes, electronic (ELSUR) or
> photographic surveillance, "JUNE" mail, male covers, trash covers and
> other miscellaneous files, and any index citations relating to or referring to
> Steven Olaes; and ("see also") files.[7]

Doc. # 138-3 at ¶¶ 13-14.

In determining whether the court should require *in camera* evaluation of the documents

listed in Defendant's Index, it is instructive to note what Plaintiff did not request through FOIA.

---

[7]    Paragraph 5 is included here because it was enumerated in Plaintiff's FOIA request.  The court interprets Paragraph 5 not as a request for any specific type of information, but as a list of places to look to retrieve the information that was requested.

Plaintiff did not request any generalized information concerning FBI policies and/or procedures in handling informants; he did not request blank evaluation forms or examples of categories of information that might be of interest to FBI in managing informants, paid or otherwise. In addition he did not request any information that was produced, either directly or indirectly by either informant alleged. All Plaintiff requested was information pertaining specifically to Olaes' or Alho's criminal or questionable conduct; information that, while highly personal to both Olaes and Alho, is entirely tangential to the issue of whether the public should have confidence in Plaintiff's conviction. While Plaintiff attempts to invoke public interest in information that would "shed light on the controversial use of paid informants and contingent fee arrangements by Law Enforcement Agencies," he did not structure his FOIA inquiries in a way that would most effectively serve that purpose.

By inspection, it is apparent that a great deal of the information requested by Plaintiff is information Defendant is not required to produce because it was generated before or following the period of Plaintiff's investigation or prosecution. Because subsection 522(c)(2) justifies the *non-disclosure* of the *existence* of information that either predated or postdated the period of time covered by the investigation and prosecution of Plaintiff, the absence of Alho's or Oales' rap sheets, histories of prior (or later) involvement as confidential informants, or disciplinary issues in the Index indicates that none of the information sought by Plaintiff was generated during the time relevant to Plaintiff's FOIA request, if it was ever generated at all.

With regard to information Defendant is required to produce, it is clear that both Olaes and Alho have privacy interests that are cognizable under Exemption 6/7(C) that are not overcome by the public's interest in disclosure which, as discussed above, is non-existent. See Roth, 642 F.3d at 1174 (even convicted criminals have a substantial interest in their "rap sheets"). Given that the combination of Exemptions 6/7(C) and 7(F) command that the court

assiduously safeguard the privacy interests of the alleged informants and given that Plaintiff has requested only information that actually or potentially would invade those interests, the court must conclude that Plaintiff's FOIA request seeks precisely that information that Defendant must withhold under law.  The court concludes that, based on the scope of what Plaintiff requested and the scope of information that is subject to exemption, there is no conceivable information that would be responsive to Plaintiff's FOIA requests, as originally worded, that would not be properly withheld under Exemptions 6/7(C) and 7(F).  Therefore, the court concludes that it need not conduct an *in camera* review of documents to determine if they contain segregable information.

In closing, the court notes that Plaintiff moved to amend his motion for a more complete Vaughn Index on September 15, 2015.  Doc. # 148.  The amendment requested consisted of an opinion from the District Court of Northern California, Pickard v. Dep't of Justice, 2015 U.S. Dist. LEXIS 20319 (N.D.Cal. Feb. 19, 2015), rejecting a Vaughn Index submitted by a government agency in a drug-related case and directing the agency to submit an index that included information sufficient to determine whether there was segregable information.  The court did, in fact, review the opinion submitted by Plaintiff but found it inapposite to the facts of this case on several grounds.  The two primary considerations that led to the court's conclusion that the Pickard case is inapposite are the facts that; (1) the Defendant in this case did tailor the exemptions claimed to the description of the documents in question, rather than simply reciting all of the exemption categories for each document, and (2) the requester in the Pickard case appears to have requested a broader scope of documents generated in the investigation of his case whereas Plaintiff, in this case, merely sought disciplinary and criminal conduct history of two particular subjects.  The court will deny Plaintiff's motion at Docket Number 148 as moot to

indicate that the proposed amendment was considered but not applied to the facts of this case.

THEREFORE, pursuant to the foregoing discussion, it is hereby ORDERED that Defendant's motion for summary judgment is GRANTED.  The Clerk of the Court shall ENTER JUDGMENT for Defendants and against Plaintiff as to all claims and all defendants.  The Clerk of the Court shall CLOSE THE CASE.  Plaintiff's motion to amend, Doc. # 148, is hereby DENIED as moot.


IT IS SO ORDERED.

Dated:   March 2, 2016   

_____

SENIOR  DISTRICT  JUDGE

-24-